HUGHES, Appellee,

v.

BROWN, Secretary of State, Appellant.

[Cite as *Hughes v. Brown* (1989), 62 Ohio App.3d 417.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–212.

Decided January 5, 1989.

*Bricker & Eckler* and *Percy Squire,* for appellee.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Andrew I. Sutter,* for appellant.

YOUNG, Judge.

This matter is before the court upon the appeal of Sherrod Brown, Ohio Secretary of State, from the trial court's decision that a quo warranto proceeding or a hearing brought pursuant to R.C. 3.07 must be conducted before the forfeiture of public office, as outlined in R.C. 2961.01, may be invoked.

The appellee, Martin J. Hughes, was appointed March 1, 1986, as a member of the Board of Elections of Cuyahoga County. The appellee's term on the board of elections is scheduled to expire on February 28, 1990. On November 13, 1987, the appellee was convicted of a felony under the laws of the United States of America in the United States District Court for the Northern District of Ohio.

On December 11, 1987, the appellee received correspondence from Brown asking the appellee to either resign from his position on the Cuyahoga County Board of Elections or to state reasons why he should not be removed from that position pursuant to the provisions of R.C. 3501.16.

The Secretary of State indicated in his correspondence with the appellee that the authority for the order of removal was R.C. 2961.01, which provides that no person convicted of a felony under the laws of the United States may hold a position of trust, profit or honor, in the state of Ohio.

The appellee informed the Secretary of State that he was appealing the felony conviction, as set forth above, and that under Ohio law a hearing must be held in accordance with R.C. 3.07 *et seq.*, prior to the appellee's removal from the Cuyahoga County Board of Elections.

The appellee filed a complaint on December 22, 1987, an amended complaint on December 23, 1987, and a motion to amend the amended complaint which was filed on January 22, 1988. The motion to amend was approved on February 4, 1988. The complaint asks for: (1) a temporary restraining order restraining the Secretary of State from removing the appellee from the Cuyahoga County Board of Elections; (2) a preliminary injunction enjoining the Secretary of State from removing the appellee without first complying with R.C. 3.07 *et seq.;* and (3) a claim for declaratory judgment for the purpose of determining the rights and status of the appellee in relation to his seat on the Cuyahoga County Board of Elections, and that said seat had not been vacated by operation of R.C. 2961.01.

Both parties submitted motions for summary judgment. In an entry dated February 18, 1988, the trial court granted the appellee's motion for summary judgment and denied the appellant's motion for summary judgment. In so doing, the trial court enjoined the appellant from removing the appellee from

the Cuyahoga County Board of Elections unless the appellant complied with the requirements of R.C. 3.07 *et seq.*, or caused the institution of an action brought pursuant to R.C. Chapter 2733. The trial court further held that R.C. 2961.01 is not self-executing.

The appellant filed a timely appeal and assigned as error that:

"The court below erred when it ruled that an action either in quo warranto or pursuant to R.C. 3.07 must be resorted to before a public office is forfeited in accordance with the terms of R.C. 2961.01."

■ There are two provisions of the Ohio Constitution which treat the removal from office of public officials. They are Section 38, Article II, Ohio Constitution and Section 4, Article V, Ohio Constitution.

Section 38, Article II, Ohio Constitution, reads as follows:

"Laws shall be passed providing for the prompt removal from office, upon complaint and hearing, of all officers, including state officers, judges and members of the general assembly, for any misconduct involving moral turpitude or for other cause provided by law; and this method of removal shall be in addition to impeachment or other method of removal authorized by the constitution.   * * * "

Section 4, Article V, Ohio Constitution, reads as follows:

"The General Assembly shall have power to exclude from the privilege of voting, or of being eligible to office, any person convicted of a felony."

Upon examination of Section 38, Article II, Ohio Constitution, it is apparent that this section does not limit Section 4, Article V, Ohio Constitution. Section 38, Article II, Ohio Constitution, does not specifically concern persons convicted of felonies but is authorization for the General Assembly to enact legislation to facilitate the removal from office of government officials for any misconduct involving moral turpitude, malfeasance, misfeasance, or nonfeasance in office and specifically recognizes that this section of the Ohio Constitution shall be in addition to other methods of removal authorized by the Ohio Constitution.

Section 4, Article V, Ohio Constitution, however, specifically authorizes the General Assembly to enact legislation "to exclude from the privilege * * * of being eligible to office, any person convicted of a felony."

R.C. 3.07 was enacted as a result of the mandate of Section 38, Article II, Ohio Constitution, and reads in pertinent part as follows:

"Any person holding office in this state, or * * * county, * * * coming within the official classification in Section 38 of Article II, Ohio Constitution, who willfully and flagrantly exercises authority or power not authorized by

law, refuses or willfully neglects to enforce the law or to perform any official duty imposed upon him by law, or is guilty of gross neglect of duty, gross immorality, drunkenness, misfeasance, malfeasance, or nonfeasance is guilty of misconduct in office. Upon complaint and hearing in the manner provided for in sections 3.07 to 3.10, inclusive, of the Revised Code, such person shall have judgment of forfeiture of said office * * *. *The proceedings provided for in such sections are in addition to impeachment and other methods of removal authorized by law * * *.*" (Emphasis added.)

The enabling legislation which is authorized by Section 4, Article V, Ohio Constitution is found in R.C. 2961.01 and reads in part as follows:

"*A person convicted of a felony under the laws of* this or any other state or *the United States,* unless his conviction is reversed or annulled, *is incompetent* to be an elector or juror, or *to hold an office of honor, trust, or profit.* * * * The full pardon of a convict restores the rights and privileges so forfeited under this section * * *." (Emphasis added.)

It should be noted that R.C. 3.07 specifically references Section 38, Article II, Ohio Constitution, and that proceedings brought pursuant to R.C. 3.07 are in addition to impeachment and other methods of removal authorized by law. Further, R.C. 3.07 makes no reference to Section 4, Article V, Ohio Constitution or to R.C. 2961.01.

There have been several cases which have addressed the legal issues which are before this court *sub judice.* In *Ridgeway v. Akron* (App.1940), 36 Ohio Law Abs. 46, 42 N.E.2d 724, the court stated that:

" * * * [A]nd it is settled in this state that, in the class of cases enumerated, it is an indispensable prerequisite to an order of removal that there shall have been a complaint filed and an opportunity for a hearing had.

"Such a requirement, in the class of cases like the case at bar, where the basis of the forfeiture of office is a finding and judgment of guilt after a full and complete judicial trial, would not be appropriate. The judgment of conviction would be conclusive and binding upon the board or officer before whom the complaint would be made, and there would be no fact for the board or officer to find; and we do not believe that the legislature intended the filing of a charge or complaint, and the affording of an opportunity to be heard, in cases where the officer has had a full and complete trial before a jury and court and has been convicted.

"It is our best judgment that these various provisions can be harmonized by holding that the requirement as to complaint and hearing applies in the class of cases and situations arising under the legislation last hereinbefore referred to, and that there is no such requirement as to the class of cases and

situations provided for under the legislation first hereinbefore referred to—to wit, where there has been a full and complete trial before a court and jury, and a judgment of conviction has been entered." *Id.* at 48, 42 N.E.2d at 726.

The Ohio Supreme Court in *State, ex rel. Trago, v. Evans* (1957), 166 Ohio St. 269, 2 O.O.2d 109, 141 N.E.2d 665, held that Trago, who was Sheriff of Jackson County and who had been committed to the Gallia County Jail for more than ninety days upon conviction of a criminal offense, had vacated the office of Sheriff of Jackson County because he had violated R.C. 305.03 and the Jackson County Commissioners had declared the office of sheriff vacated. At 166 Ohio St. at 273, 2 O.O.2d at 112, 141 N.E.2d at 668–69, the Supreme Court stated that:

*"In the present case there is no question of fact to be determined.*

"It is stipulated that relator was absent from Jackson County for 90 consecutive days, and that his absence was not caused by sickness or injury. Therefore, the county commissioners had a mere ministerial and mandatory duty to perform, that is, to declare that a vacancy existed in the office of sheriff, which they did. Thereafter, respondent was appointed sheriff, in accordance with statutory provisions, not because relator had been removed from office but for the reason there was a vacancy in the office." (Emphasis added.)

In a third case, *State, ex rel. Hover, v. Wolven* (1963), 175 Ohio St. 114, 23 O.O.2d 399, 191 N.E.2d 723, the Hamilton County Prosecutor sought to test, in quo warranto, whether the Forrest Hills Local School District Board of Education could summarily remove a board member from the membership on that board of education upon the board member's election to the Board of Education of Hamilton County. The Supreme Court held in paragraph three of the syllabus:

"Where an individual accepts a second office whose duties are incompatible with those of another office already held by such individual, the first held office is thereby vacated."

At 175 Ohio St. at 115, 23 O.O.2d at 400, 191 N.E. at 724–725, of the *Hover* opinion, the court stated:

"We cannot agree with relator that Judd could only be removed under the provisions of Section 3.07, Revised Code. * * * "

Therefore, we conclude, that in certain instances the Ohio Supreme Court has found that it is unnecessary to follow the mandate of R.C. 3.07, which requires that a complaint be filed and a hearing held before the appointing authority dismisses a public employee charged with misfeasance, nonfeasance or malfeasance in office.

The appellee, however, references other instances which do require compliance with R.C. 3.07. One such case is *State, ex rel. Hughes, v. Brown* (1972), 31 Ohio St.2d 41, 60 O.O.2d 23, 285 N.E.2d 376, in which several employees of the Cuyahoga County Board of Elections were summarily dismissed without the filing of a complaint or a hearing as required by R.C. 3.07. This attempted summary removal was not for the reason these individuals had been convicted of a felony, but for some unknown or unstated reason and the respondent, upon a motion to dismiss, failed to provide the court with a reason for the Secretary of State's action.

The *Brown* case can be distinguished from the cases cited above on the basis that no reasons for the dismissal were provided the relator even though factual questions may have existed, and the ultimate issue of removal may have been within the discretion of the Secretary of State.

Another case referenced by the appellee for the proposition that public employees cannot be deprived of their employment without the safeguards of due process is *Cleveland Bd. of Edn. v. Loudermill* (1985), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494. The safeguards noted by the court in *Loudermill* are the requirements of a hearing to determine the factual basis for an employee discharge and the chance for the appointing authority to acquaint himself with the facts before he exercises his discretion with regard to the dismissal of the employee in question.

At 470 U.S. at 543, 105 S.Ct. at 1494, 84 L.Ed.2d at 504, is the following discussion by the court:

"Second, some opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision. Dismissals for cause will often involve factual disputes. Cf. *Califano v. Yamasaki*, 442 U.S. 682, 686 [99 S.Ct. 2545, 2550, 61 L.Ed.2d 176, 183] (1979). Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect. See *Goss v. Lopez*, 419 U.S. [565], at 583–584 [95 S.Ct. 729, at 740–741, 42 L.Ed.2d 725, 739–740 (1975)]; *Gagnon v. Scarpelli*, 411 U.S. 778, 784–786 [93 S.Ct. 1756, 1760–1761, 36 L.Ed.2d 656, 662–664] (1973).

"This is not to say that where state conduct is entirely discretionary the Due Process Clause is brought into play. See *Meachum v. Fano*, 427 U.S. 215, 228 [96 S.Ct. 2532, 2540, 49 L.Ed.2d 451] (1976). Nor is it to say that a person can insist on a hearing in order to argue that the decisionmaker should be lenient and depart from legal requirements. See *Dixon v. Love*, 431 U.S. 105, 114 [97 S.Ct. 1723, 1728, 52 L.Ed.2d 172] (1977). The point is that where there is an entitlement, a prior hearing facilitates the consideration of whether

a permissible course of action is also an appropriate one. This is one way in which providing 'effective notice and informal hearing permitting the [employee] to give his version of events will provide a meaningful hedge against erroneous action. At least the [employer] will be alerted to the existence of disputes about facts and arguments about cause and effect.... [H]is discretion will be more informed and we think the risk of error substantially reduced.' *Goss v. Lopez,* 419 U.S., at 583–584 [95 S.Ct., at 740–741, 42 L.Ed.2d at 739–740]."

Applying the due process standards as set forth in the opinion to the case *sub judice,* there is no requirement of a hearing for the reason that the felony conviction is an accomplished fact and pursuant to R.C. 2961.01 the Secretary of State has no discretion to disregard the felony conviction but must declare the office vacated.

■ A final assertion by the appellee is that the conviction by the federal district court of the appellee for a felony is in fact not a conviction because at the time of the hearing before the Tenth District Court of Appeals, that conviction was being appealed. This court addressed that particular issue in *Plotnick v. State Medical Bd. of Ohio,* (Sept. 27, 1984), Franklin App. Nos. 84AP–225 and 84AP–362, unreported, 1984 WL 5921. This court held in *Plotnick* that:

" * * * However, there is a conviction, even though an appeal is taken and is pending, and the conviction remains valid and enforceable during the pendency of an appeal. Although a stay of execution (release on bail) may under some circumstances be appropriate during an appeal, the stay is not of the conviction but, rather, the stay is of execution of the judgment of conviction." *Id.* at 13.

For the foregoing reasons, the appellant's assignment of error is sustained, and the matter is remanded to the common pleas court for further proceedings in accordance with law and this opinion.

*Judgment reversed
and cause remanded.*

STRAUSBAUGH and JONES, JJ., concur.

FRED E. JONES, J., of the Twelfth Appellate District, sitting by assignment.