THE STATE, EX REL. VANA ET AL., APPELLEES, *v.*
MAPLE HEIGHTS CITY COUNCIL ET AL., APPELLANTS.

[Cite as State, ex rel. Vana, *v.* Maple Hts. City Council (1990),
54 Ohio St. 3d 91.]

(No. 89-160—Submitted June 19, 1990—Decided October 10, 1990.)

*Friedman, Gilbert & Berezin* and *Alec Berezin,* for appellees.

*Joseph W. Diemert,* law director, *Reddy, Grau & Meek, Francis X. Reddy, Jr.,* and *Paul A. Grau,* for ap-

pellants Maple Heights City Council et al.

*Sindell, Rubenstein, Einbund, Pavlik, Novak & Celebrezze* and *Frank D. Celebrezze,* for appellant Gerard Zgrabik.

MOYER, C.J. In the case before us, appellant Zgrabik concedes that Section 4, Article III of the Maple Heights Charter prohibits him from holding office. He contends, however, that this provision violates the Equal Protection Clauses of the Ohio and United States Constitutions because it lacks a rational basis and infringes on rights of political expression. Since Zgrabik challenges the charter classification under the Equal Protection Clauses, we must first determine the appropriate standard of review.

Legislation enacted by a municipality ordinarily is presumed to be valid and the enacting body is presumed to have acted constitutionally. *Xenia* v. *Schmidt* (1920), 101 Ohio St. 437, 130 N.E. 24. Under a traditional equal protection analysis, class distinctions in legislation are permissible if they bear some rational relationship to a legitimate governmental objective. Departures from traditional equal protection principles are permitted only when burdens upon suspect classifications or abridgments of fundamental rights are involved. *Clements* v. *Fashing* (1982), 457 U.S. 957, 963.

Zgrabik does not contend, and we do not find, that he is a member of a suspect classification which, as such, would justify a departure from the traditional equal protection principles. Additionally, the United States Supreme Court has not recognized candidacy as a fundamental right invoking a "rigorous standard of review." *Bullock* v. *Carter* (1972), 405 U.S. 134, 142-143. For, as this court previously noted, "* * * there is no fundamental right to run for public of-

fice." *State, ex rel. Keefe,* v. *Eyrich* (1986), 22 Ohio St. 3d 164, 165, 22 OBR 252, 489 N.E. 2d 259, 260.

Thus, since neither a suspect classification nor a fundamental right is involved, the charter restriction must be upheld "* * * if it bears a rational relationship to a legitimate governmental interest. * * * In a rational-basis analysis, we must uphold the statute unless the classification is *wholly irrelevant* to the achievement of the state's purpose." (Footnote deleted.) *Menefee* v. *Queen City Metro* (1990), 49 Ohio St. 3d 27, 29, 550 N.E. 2d 181, 183.

Applying the rational relationship test to the Maple Heights City Charter, the charter is easily able to withstand the proper standard of review. Even though it is not possible to glean from the charter itself all the reasons it was adopted, it is apparent that by prohibiting elected officers from having an interest in "the profits or emoluments of any contract, work or service for the Municipality," the electors of the city were concerned with actual or potential conflicts of interest as well as the appearance of impropriety by city council members. The city may properly determine that it wants to avoid the appearance of impropriety caused by permitting its council members to receive a salary from two public payrolls. See *Bennett* v. *Celebrezze* (1986), 34 Ohio App. 3d 260, 518 N.E. 2d 25. It is also within the authority of the city to determine that it chooses not to have its council members receive salaries from two entities that are supported by public tax monies, *State, ex rel. Platz,* v. *Mucci* (1967), 10 Ohio St. 2d 60, 39 O.O. 2d 48, 225 N.E. 2d 238, and that permitting one person to hold two governmental positions would accumulate too much power in one person. By adopting this provision of the charter, the citizens of Maple Heights believed that

this restriction was the best method to assist members of council in avoiding potential conflicts of interest. *Bennett, supra.*

The discussion above belies the suggestion that there was no reasonable basis for the city to have adopted the restrictive language of its charter. There may be other methods, perhaps even better methods, for the city to achieve its stated goals; however, "[u]nder traditional equal protection principles, a classification is not deficient simply because the State could have selected *another* means of achieving the desired ends. * * * Neither the Equal Protection Clause nor the First Amendment authorizes this Court to review in cases such as this the manner in which a State has decided to govern itself. * * * Our view of the wisdom of a state constitutional provision may not color our task of constitutional adjudication." *Clements, supra,* at 969, 972-973.

Appellant Zgrabik suggests that allowing a teacher employed outside the Maple Heights school district to serve on the council negates the Maple Heights Charter restrictions. We disagree. The city may reasonably find that the appearance of impropriety or danger of potential conflict is greater when the council member is on the payroll of both the city and the city school district. It is not unreasonable to believe that more opportunities for conflicts arise between the city and its school district than between the city and an outside school district. The provision in the Maple Heights Charter that prohibits an elected official from simultaneously holding other public office or other public employment does not violate the Equal Protection Clauses of the Ohio and United States Constitutions, and carving out an additional exception to the public employment prohibition does not serve to in-validate the charter restrictions. See *Mucci* and *Bennett, supra.*

Distinctions among various classifications for public officeholders are permissible if based upon a rational predicate. "The Equal Protection Clause allows the states considerable leeway to enact legislation that may appear to affect similarly situated people differently * * *. *Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them.*" (Emphasis added.) *Clements, supra,* at 962-963.

The charter is not required to restrict all classes of impermissible public employment because it restricts some classes of impermissible public employment. It is only necessary that the classification be conspicuous, rest on reasonable grounds and affect all persons in the class equally. *Xenia, supra.* No ambiguity exists in the Maple Heights Charter: public officers and those in public employment, except teachers employed outside the school district, are prohibited from serving on the city council. All persons in each classification are treated equally: no public officers, no employees within the Maple Heights school district and no other public employees, except teachers employed outside the school district, may become council members.

In *Clements, supra,* a Texas state constitutional provision required certain officeholders to resign their posts prior to running for other elective office. In upholding the state's right to impose certain basic qualifications upon those seeking public office, the United States Supreme Court emphasized that it was not necessary for the state to treat all officeholders similarly: "That the State did not go further in applying the automatic resignation provision to those of-

ficeholders whose terms were not extended * * *, absent an invidious purpose, is not the sort of malfunctioning of the State's lawmaking process forbidden by the Equal Protection Clause * * *. A regulation is not devoid of a rational predicate simply because it happens to be incomplete * * *. The Equal Protection Clause does not forbid Texas to restrict one elected officeholder's candidacy for another elected office unless and until it places similar restrictions on other officeholders." (Citations omitted.) *Id.* at 971. "The State 'need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked.'" *Id.* at 969-970 (quoting *McDonald* v. *Bd. of Election Commrs.* [1969], 394 U.S. 802, at 809).

Therefore, Section 4, Article III of the Maple Heights City Charter is constitutional and respondent Zgrabik cannot serve as a member of the council unless he resigns his position of public employment. Under general Ohio election laws, a candidate for public office need not be qualified in order to run for that office, but must remove any disqualifications immediately upon assuming the office; otherwise, the officeholder forfeits that office. Since Zgrabik failed to remove his disqualification, his council seat should be declared vacant and forfeited. See, generally, *State, ex rel. Fisher*, v. *Brown* (1972), 32 Ohio St. 2d 23, 61 O.O. 2d 190, 289 N.E. 2d 349.

Section 2, Article VII of the city charter provides the manner in which the vacancy created by Zgrabik's forfeiture of his office should be filled: "In the event a vacancy shall occur in Council for any reason, the vacancy shall be filled for the unexpired term with a successor from the district in which the vacancy occurred, within thirty (30) days next following the vacancy, by majority vote of the remaining district councilmen. * * *" Thus, the remaining council members (excluding Zgrabik) should, within thirty days, appoint someone from District 4 of the city of Maple Heights to serve the remainder of Zgrabik's term of office.

Section 3, Article III of the charter explains who serves until a successor is appointed: "If any elective officer * * * shall cease to possess any or all qualifications provided for in the Charter, his office shall be deemed vacant and forfeited, such forfeiture to be effective only when declared so by Council or proper judicial authority. Each officer, however, shall serve until his successor is qualified." Therefore, Zgrabik may continue to serve on the council until the remaining council members appoint his successor.

Relator Yoder's contention that he is a holdover incumbent is without merit. When the mayor resigned his position, effective November 30, 1987, the president of council became the mayor of Maple Heights, pursuant to Section 7, Article V of the charter, which provides: "In the event of any vacancy in the office of the Mayor, the President of the Council shall succeed to such office until the next municipal election is held for officers, at which time the Mayor's office shall be declared vacant and the successful candidate for Mayor will again be elected for a four (4) year term. * * *" Yoder, as president *pro tem* of council, became the council president, pursuant to Section 5, Article VII of the charter: "* * * If the office of President of Council becomes vacant, the president pro tem shall assume the office, perform the duties thereof and shall be relieved of his rights and duties as a district councilman * * *. Council shall elect one of its members Council Presi-

dent pro tem, who shall assume the office of President of Council in the event said office becomes vacant, perform the duties thereof and shall be relieved of his rights and duties as a district councilman. His District Council office shall be declared vacant and a successor elected in accordance with the terms of this Charter.''

By operation of law, when the mayor resigned his office, the president of council succeeded to the position of mayor. Since the mayor's resignation was permanent, the vacancy his resignation created was filled by the council president, thus creating a vacancy in the office of president of council. By operation of law, Yoder, the president *pro tem* of council, became council president, at which time Yoder vacated his district council office. A successor to Yoder's district council seat was never elected in accordance with the terms of the city charter.

We cannot enforce the Maple Heights Charter provisions in one instance and ignore them in another. Yoder's claimed lack of knowledge of the mayor's resignation and Yoder's failure to take an oath of office during the relevant time period do not affect the rules of succession found in the charter. See *State, ex rel. Bolsinger,* v. *Oridge* (1938), 134 Ohio St. 206, 12 O.O. 11, 16 N.E. 2d 334. Yoder was not the incumbent from District 4 when Zgrabik was elected. For the foregoing reasons, we conclude that the court of appeals was correct in allowing

relators' writ of mandamus but erred when it allowed relators' writ of quo warranto. Accordingly, we reverse the judgment of the court of appeals in part as to the writ of quo warranto and affirm the judgment in part as to the writ of mandamus ordering Zgrabik replaced forthwith.

*Judgment reversed in part and affirmed in part.*

SWEENEY, HOLMES, DOUGLAS and WRIGHT, JJ., concur.

H. BROWN and RESNICK, JJ., dissent.

H. BROWN, J., dissenting. I must respectfully dissent from the syllabus and judgment because Section 4, Article III of the Maple Heights Charter, as applied to appellant Zgrabik, is not rationally related to a legitimate state purpose.[1]

At common law, a public official or employee could freely hold more than one office, provided the positions were not incompatible. Throop, A Treatise on the Law Relating to Public Officers and Sureties in Official Bonds (1892) 33-34, Section 30; Mechem, A Treatise on the Law of Public Offices and Officers (1890) 267-268, Section 420. At common law, offices were said to be incompatible "when from the multiplicity of business in them they cannot be executed with care and ability: or when their being subordinate and interfering with each other, it induces a presump-

---

[1] I agree that a "rational basis" standard of review applies in the instant case; however, it should be noted that the highest courts of at least two of our sister states have concluded that municipal charter provisions similar to Section 4, Article III affect fundamental political rights, and are therefore subject to a higher degree of

scrutiny. See *Acevedo* v. *North Pole* (Alaska 1983), 672 P. 2d 130, 135 (provision subject to strict scrutiny due to impact on franchise rights; upheld as applied to city employee elected to city council); *Cummings* v. *Godin* (1977), 119 R.I. 325, 332-342, 377 A. 2d 1071, 1075-1079 (provision infringes First Amendment rights; held to be overbroad).

tion that they cannot be executed with impartiality and honesty." 7 Bacon's Abridgement, Offices & Officers (1845) 313 (paraphrasing Lord Coke). In most of the old cases, incompatibility arose because one of the two offices was charged with supervising the other. See, *e.g.*, Throop, *supra*, at 39-40, Sections 34-35, and cases therein cited. However, common-law incompatibility may also arise in other situations, such as where holding the two particular offices would violate the principle of separation of powers. *E.g.*, *Opinion of the Justices No. III* (1825), 3 Me. 484, 486 (justice of the peace and sheriff, deputy sheriff or coroner).

The Maple Heights Charter provision at issue here is, however, much broader than the common-law incompatibility rule. It prohibits an elected official of the city from holding *any* other public office except that of a notary public, a member of the Ohio National Guard, a member of the armed forces reserves of the United States not on active duty, or a public school teacher in a district outside the city. The majority suggests that this broader prohibition is necessary to "avoid the appearance of impropriety caused by permitting its council members to receive a salary from two public payrolls" and prevent an individual from "accumulat[ing] too much power" through holding multiple offices.

I agree with the majority that the city has an important interest in insuring the loyalty of its officers, and in preventing the evils which would arise if a public servant were to effectively become her own supervisor. These are the reasons why the common-law incompatibility rule was developed. Clearly, a provision in the Maple Heights Charter, or even in the Ohio Constitution or the Revised Code, which prohibited the holding of incom-patible offices would survive constitutional scrutiny.

However, it is clear that Zgrabik does not hold what the common law would consider incompatible offices. There is no evidence that Zgrabik's duties as a council member and his duties as a school administrator are such that they " 'cannot be executed with care and ability' " by the same person. There is nothing which indicates that Zgrabik has become his own supervisor. Though the city of Maple Heights and the Maple Heights City School District have substantially the same population and territory, they are distinct political subdivisions, *Cleveland* v. *Public Library Bd. of Cleveland City School Dist.* (1916), 94 Ohio St. 311, 114 N.E. 247, neither of which is charged with overseeing the other. Nor has Zgrabik been placed in the position of representing conflicting interests by virtue of his dual employment. Thus, the majority's conflict-of-interest concerns are not applicable in this situation. See *Stone* v. *Wichita Falls* (D. Tex. 1979), 477 F. Supp. 581, 585. It is not necessary to disqualify Zgrabik from council in order to ensure that he remains a loyal public servant.

Neither do the majority's other justifications logically apply to Zgrabik. In most Ohio cities, city council is a part-time job with a modest salary. Few council members take the job because of the financial rewards. Zgrabik could probably earn more money for the same amount of effort by taking a part-time job in private industry than by serving on council. Thus, there is no demonstrated "appearance of impropriety" in his drawing a second paycheck as a city council member.

Neither is there any danger that Zgrabik has or will accumulate "too much power." In his role as supervisor of purchasing and food service in the

city school district, he is under the direction of the school board. As a member of council, he is only one of several, and cannot enact legislation without the cooperation of others. There is no possibility that Zgrabik could combine the powers of these two offices to the detriment of the citizens of Maple Heights.

Lawyers, bankers and influential businessmen routinely sit on city councils, drawing second or even third paychecks. These people are not disqualified for holding "too much power." They are seen as performing responsible civic service. Zgrabik, the duly elected, and reelected, choice of the citizens of Maple Heights, is no less entitled to serve. The voters, in the exercise of their collective common sense, have concluded that Zgrabik's employment by the school district does not render him any less fit to serve the public than council members who are employed in private industry. Unless there is a valid reason to disenfranchise him, the charter provision which does so must be found unconstitutional.

The constitutional infirmity of the Maple Heights Charter provision is further demonstrated by the exception it grants to teachers employed by school districts outside Maple Heights. In terms of the danger of "conflicts of interest" and "accumulat[ing] too much power in one person," there is no difference between a teacher employed by the Maple Heights schools and a teacher employed by some other school system. Yet, one is permitted to serve, and the other is barred. Further, no reason has been advanced why teachers from other school districts should be allowed to serve but not the janitors, bus drivers, cafeteria workers and other employees of the school district.

In conducting a "rational basis" review, we should, of course, defer to the wisdom of the legislature, but we should be careful not to substitute unthinking deference for judicial scrutiny and analysis. See *United States* v. *Vogel Fertilizer Co.* (1982), 455 U.S. 16, 24; *United States* v. *Cartwright* (1973), 411 U.S. 546, 550. I would hold that Section 4, Article III of the Maple Heights Charter is unconstitutional as applied to Zgrabik and reverse the judgment of the court below in its entirety.

RESNICK, J., concurs in the foregoing dissenting opinion.