OPINION
{¶ 1} This is an original action in quo warranto submitted on agreed stipulations of fact. Relator, Robert L. Powers, seeks to replace respondent, James D. Curtis, as a member of council for the village of Sabina located in Clinton County, Ohio. For the following reasons we grant in part and deny in part the requested writ of quo warranto.
 {¶ 2} The facts are as follows: The respondent village of Sabina is a municipal corporation duly organized under Ohio law.[1] Its legislative authority consists of six elected council members and a mayor. Council members for Sabina receive a salary for their positions.
 {¶ 3} On September 9, 2002, council member Darrell Nolley submitted a written resignation to the mayor and remaining council members. The next scheduled council meeting on September 12, 2002 was attended by four of the remaining five council members, along with the mayor. At that meeting, council voted unanimously to accept Nolley's resignation.
 {¶ 4} At this same council meeting and after the resignation process was complete, council member Sally Kress moved to nominate relator, who lives with Kress, to fill the vacant seat for the remainder of Nolley's term. Relator had served two previous four-year terms on council between 1994 and 2001. Relator also possessed a 1964 Warren County, Ohio felony conviction for Possession of Obscene Literature in violation of then R.C. 2905.34.
 {¶ 5} Kress' motion to nominate relator was seconded. The vote of the four attending council members resulted in a tie. Once the tie was declared, the mayor then cast the deciding vote in favor of appointing relator to fill the vacancy. The council meeting was temporarily suspended as relator was sworn in and took his seat on council. Thereafter, the meeting resumed and relator participated as a member of council for the duration of the meeting.
 {¶ 6} At the next scheduled council meeting on September 26, 2002, the council member absent from the previous meeting, Peggy Sloan, moved for a reconsideration of the September 12, 2002 vote appointing relator. The motion was seconded and, with relator abstaining, the five remaining council members voted three to two in favor of the motion, resulting in relator's removal from council and creating a new vacancy.
 {¶ 7} On October 7, 2002, council called a special meeting, attended by three of the five active council members. At that meeting, council appointed respondent Curtis to fill the vacancy for the remainder of Nolley's term. Curtis continues presently in that capacity.
 {¶ 8} On October 17, 2002, relator filed this action in quo warranto. In his complaint, relator prays this court to remove Curtis from his current position as a member of village council and restore relator to that position. Respondents filed an answer on November 20, 2002 raising various defenses. The parties thereafter took depositions of witnesses, arrived at a stipulation of facts and submitted briefs.
 {¶ 9} The cause is now before this court for decision. Additional facts are discussed below as they become pertinent.
 {¶ 10} A writ of quo warranto is "a high prerogative writ and is granted, as an extraordinary remedy, where the legal right to hold an office is successfully challenged." State ex rel. Battin v. Bush (1988),40 Ohio St.3d 236, 238. R.C. 2733.06 authorizes a private person to file as relator an action in quo warranto to challenge the right to hold a public office. In order to completely prevail, the private relator must show (1) that the public office is being unlawfully held and exercised by the respondent, and (2) that the relator is entitled to the office. Stateex rel. Delph v. Barr (1989), 44 Ohio St.3d 77. The relator need not establish his right to title to the public office beyond all doubt, but rather need only establish his claim "in good faith and upon reasonable grounds." State ex rel. Hanley v. Roberts (1985), 17 Ohio St.3d 1, 6. However, "the mere possibility of appointment does not constitute entitlement in any way." State ex rel. Halak v. Cebula (1977),49 Ohio St.2d 291, 293. The remedy afforded in quo warranto is that of ouster of the respondent from public office pursuant to R.C. 2733.14
and, where the relator is a private person, the execution of office by the relator pursuant to R.C. 2733.17. Quo warranto is the exclusive action for litigating one's right to hold a public office. State ex rel.Battin v. Bush.
 {¶ 11} If a relator is unable to prove entitlement to the disputed office, judgment may still be rendered on the remaining issue of whether the respondent lawfully holds the office. State ex rel. Myers v. Brown,87 Ohio St.3d 545, 2000-Ohio-478; State ex rel. Ethell v. Hendricks
(1956), 165 Ohio St. 217.
 {¶ 12} In his filings, relator asserts he was properly appointed to council on September 12, 2002 and improperly ousted from council on September 26, 2002. Therefore, we begin with an examination of the general procedures used to appoint and oust relator for the contested term.[2]
 {¶ 13} When a vacancy occurs on village council, R.C. 731.43(A)(1) authorizes the legislative authority of the village (i.e. the village council) to elect a new member within 30 days to fill the remainder of the unexpired term. To obtain the necessary quorum for council to act, R.C. 731.44 requires the attendance of a majority of all the elected members. When a vacancy on council exists, a quorum consists of the majority of the remaining elected and qualified officials. State ex rel.Attorney General v. Orr (1899), 61 Ohio St. 384, 385-386. Although the mayor would ordinarily have no vote, R.C. 733.24 authorizes the mayor to cast a tie-breaking vote where council is evenly split. R.C. 733.24 does not differentiate or limit the types of tie votes a mayor can break. SeeBabyak v. Alten (1958), 106 Ohio App. 191.
 {¶ 14} To be considered for a position on village council, a prospective candidate must meet the qualifications described in R.C. 731.12. These qualifications include residency within the village for one year immediately preceding the election and status as an elector of the village.
 {¶ 15} It appears from the stipulated facts that relator's appointment to council on September 12, 2002 facially met the above statutory requirements. Respondents concede in their brief that relator met the R.C. 731.12 qualifications regarding residency and elector status. Additionally, council clearly acted within the 30 days required by R.C. 731.43(A)(1). Council had the necessary quorum present, as four of the remaining five members were present and participated, in addition to the mayor. When council's vote evenly split two to two, R.C. 733.24
authorized the Sabina mayor to cast the tie-breaking vote, resulting in relator's appointment to council.
 {¶ 16} Once properly appointed or elected, Ohio law provides several possible ways a village council member may be ousted from office. For example, R.C. 733.72 et seq. describes a procedure involving a complaint filed with the probate judge alleging certain types of misconduct in office. R.C. 731.45 allows council itself to expel a member for disorderly conduct or violation of its rules, as well as for an unexcused absence continuing for two months. R.C. 3.07 to 3.10 provides a general, all-inclusive method for removal of a public official, including village council members.
 {¶ 17} As mentioned above, the record in this case shows that after the resignation of Nolley, four of the five remaining council members, along with the mayor, participated in the election of relator to council. At the next regularly scheduled council meeting, with all members present, the council member absent from the prior meeting moved for reconsideration of the vote electing relator, stating "it was done kind of quickly" and that council by law had up to thirty days to elect a new member.[3] The motion was seconded. Council voted three to two, with relator abstaining, to reconsider the vote electing relator. As a result of this vote, relator was removed as council member and a vacancy was declared.
 {¶ 18} On October 7, 2002, a special meeting of council was called with three members attending. The participating members then elected respondent Curtis to council. Curtis presently continues in that capacity.
 {¶ 19} We can find no Ohio law authorizing the procedure used herein to remove relator for the reasons articulated by council. Respondents have likewise cited no such supporting authority. However, the Ohio Supreme Court did consider the ability of a city council to rescind or reconsider a completed vote filling a vacancy for the office of city clerk in State ex rel. Calderwood v. Miller (1900),62 Ohio St. 436. The court concluded, "[t]hey could make this choice but once. Having done so they could not reconsider it." Id. at 445. This holding is consistent with the majority of other jurisdictions. See Stateex rel. Burdick v. Tyrell (1914), 158 Wis. 425, 149 N.W. 280, State v.Phillips (1887), 79 Me. 505, 11 A. 274, Ekonomon v. Town of Milford
(1958), 21 Conn. Sup. 123, 145 A.2d 381, Morris v. Cashmore (1938),3 N.Y.S.2d 624, 253 A.D. 657, affirmed, 278 N.Y. 730, 17 N.E.2d 143.
 {¶ 20} In their brief, respondents mention R.C. 731.44, which states, in pertinent part, that "The legislative authority of a municipal corporation shall be the judge of the election and qualification of its members." We do not read this statute to mean that council can elect or expel a member in any fashion they desire. Further, this statute does not make council the exclusive judge of the qualifications of its members, but rather also allows a court in quo warranto to "determine whether in law the facts constitute a disqualification." State ex rel. Murray v.Hansbrough (Oct. 27, 1986), Auglaize App. No. 2-86-16, quoting Holbrookv. Smedley (1909), 79 Ohio St. 391.
 {¶ 21} Our inquiry, however, does not end here. Respondents raise two specific challenges to the validity of relator's appointment to council. First, respondents assert that council member Kress' nomination and vote to appoint relator on September 12, 2002 was invalid. Second, respondents assert that relator is incompetent to serve in office.
 {¶ 22} Regarding the first challenge, respondents submit that relator's September 12, 2002 election to council was invalid because Kress could not lawfully nominate or vote for relator. Respondents state Kress' relationship with relator created an impermissible conflict of interest for Kress amounting to criminal violations of R.C. 102.03(D) and2921.42(A)(1). Respondents state that the facts show Kress nominated relator for a salaried position with the village at the same time she shared a residence and some living expenses with relator. Respondents conclude that Kress' nomination and vote for relator are therefore void. With Kress' vote voided, respondents contend there was no tie vote on council for the mayor to break.
 {¶ 23} R.C. 102.03(D) states, "No public official or employee shall use or authorize the use of the authority or influence of office or employment to secure anything of value or the promise or offer of anything of value that is of such a character as to manifest a substantial and improper influence upon the public official or employee with respect to that person's duties." Violation of this section is a misdemeanor of the first degree. R.C. 102.99(B).
 {¶ 24} R.C. 2921.42(A)(1) states, "No public official shall knowingly do any of the following: Authorize, or employ the authority or influence of his office to secure authorization of any public contract in which he, a member of his family, or any of his business associates has an interest." Violation of this section is a felony of the fourth degree. R.C. 2921.42(E).
 {¶ 25} The depositions of Kress and relator describe relator as a 73-year-old man living with Kress in a platonic relationship in a house owned by Kress. Kress testified she does not charge relator rent, but that relator does pay some of the utility bills and has paid the real estate taxes "once or twice." Kress testified that the pay for being a village council member is about $78 a month after taxes. We find no contradictory evidence in the depositions or stipulated facts.
 {¶ 26} We note that there is no evidence in the record of any filed indictment or complaint, let alone a conviction, relating to Kress' actions in nominating or voting for relator. R.C. 102.06 provides a specific procedure for pursuing alleged violations of R.C. 102.03 and2921.42. It authorizes the appropriate ethics commission to receive and initiate such complaints and hold a hearing if it finds there is reasonable cause. If the commission believes the hearing establishes the allegations to be true and constituting a violation of R.C. 102.03 or2921.42, it reports its findings to the prosecuting attorney for possible criminal prosecution.
 {¶ 27} While an ethics commission considers the matter, the accused has statutory rights relating to notice, representation by counsel, subpoenas, examination and cross-examination of witnesses, and production of evidence. If the matter is referred to the prosecutor, the matter proceeds like other criminal prosecutions and provides an accused with the full litany of criminal protections afforded under Ohio and federal law.
 {¶ 28} Based on the available record before us and in the context of a quo warranto action, we decline to make a finding of criminal wrongdoing by Kress absent any investigation or indictment through statutorily available avenues. We note that Kress is not even a party in this proceeding. Certainly, the mechanism to fully defend (or prosecute, for that matter) the allegations is not present in this quo warranto action.
 {¶ 29} Additionally, it appears that even if we were to find a criminal violation by Kress in this quo warranto action based on the available facts, we could not reach the remedy respondents request. Respondents urge us to find that because of the alleged criminal conduct, Kress' nomination and vote for relator were void and that relator was never legally on council at all.
 {¶ 30} The Sixth District Court of Appeals considered a related argument in Mather v. Springfield Township (May 19, 1995), Lucas App. No. L-94-196. Mather involved an appeal of a common pleas court ruling affirming an administrative decision to approve a zoning change. The appellant therein contended the participating chairman of the zoning commission, one of the agencies involved in the administrative process, had a conflict of interest amounting to a violation of R.C. 102.03. The Sixth Appellate District held, "reversal or vacation of an administrative decision is not the remedy for a violation of R.C. 102.03; the remedy is to notify the Ethics Commission, who conducts an investigation." Id. at *3.
 {¶ 31} Similarly, the Eleventh District Court of Appeals considered a taxpayer appeal following an unsuccessful attempt to enjoin the adoption and enforcement of a new ordinance that increased pay levels for city officials. City of Warren ex rel. Bluedorn v. Hicks (1997),124 Ohio App.3d 621. The Eleventh District agreed with the trial court that an injunction proceeding was not the appropriate forum for raising alleged violations of R.C. 102.03. Id. at 629.
 {¶ 32} We see no reason why these cases would not be equally applicable to alleged violations of R.C. 2921.42. Therefore, we believe even if we were to find a criminal violation of R.C. 102.03 or 2921.42
based on the facts available here, we could not reach the remedy respondents seek. The respondents' R.C. 102.03 and 2921.42 claim is not well-taken.
 {¶ 33} Respondents next challenge relator's claimed right to hold office due to relator's 1964 felony conviction. Section 4, Article V, Ohio Constitution reads, "The General Assembly shall have the power to exclude from the privilege of voting or being eligible to office, any person convicted of a felony." From this constitutional authorization comes what is now R.C. 2961.01. Although this statute has been amended and expanded from time to time since relator's conviction, at all times relevant it provided that a person convicted of a felony under the laws of Ohio is incompetent to hold an office of honor, trust, or profit unless the conviction is reversed, annulled or pardoned.[4]
 {¶ 34} In addition to the curative avenues expressly available in R.C. 2961.01, the Ohio Supreme Court has held that expungement of a conviction pursuant to R.C. 2953.32 and 2953.33 also restores the rights and privileges forfeited under R.C. 2961.01. State ex rel. Gains v.Rossi, 86 Ohio St.3d 620, 1999-Ohio-213.
 {¶ 35} In this case, relator served to completion two prior four-year terms of office on council between 1994 and 2001 with his prior felony conviction. The existence of this conviction was apparently no secret to council. Relator describes the issue as being discussed in an open council meeting in 1995. As a result, the then-solicitor for the village of Sabina researched the issue and in March 1995 submitted an opinion that relator was legally entitled to hold office.
 {¶ 36} There is nothing in the record to suggest any further action taken on the issue by any party until respondents raised it in their November 20, 2002 answer to relator's quo warranto complaint. By this time, council had already appointed and then ousted relator from his latest term in office. On February 14, 2003, while this quo warranto action was pending in this court, relator applied for expungement of his conviction in the Warren County Court of Common Pleas. The court granted relator's application on March 19, 2003.
 {¶ 37} As an initial matter, we consider relator's argument that respondents have waived any right to contest relator's competence to hold office because council did not take action to remove relator from office during relator's prior two terms. Generally, a village has home-rule authority to regulate the qualifications of its officers. State PersonnelBoard of Review v. City of Bay Village Civil Service Commission (1986),28 Ohio St.3d 214, 216. However, "[I]t is a fundamental principle of Ohio law that, pursuant to the `statewide concern' doctrine, a municipality may not, in the regulation of local matters, infringe on matters of general and statewide concern." State ex rel. Evans v. Moore (1982),69 Ohio St.2d 88, 89-90 (citations omitted). R.C. 2961.01 eligibility is not "a subject of purely local concern, but one of statewide concern, namely, the punishment of felony offenders." State ex rel. Corrigan v.Barnes (1982), 3 Ohio App.3d 40, 45.
 {¶ 38} Clearly, the village of Sabina could not enact a local ordinance overriding R.C. 2961.01. We do not find authority, and relator cites none, allowing a village to waive a matter of statewide concern going to basic Ohio eligibility requirements to hold public office. We therefore proceed to consider the issue below.
 {¶ 39} Ohio follows the general rule for elections that, absent express constitutional or statutory language to the contrary, a disqualification from holding public office does not prevent one from running for the office as a candidate. Fisher v. Brown (1972),32 Ohio St.2d 23. However, the successful candidate must remove the disqualification immediately upon assuming office. State ex rel. Vana v.Maple Heights (1990), 54 Ohio St.3d 91, 94.
 {¶ 40} There is a dearth of cases interpreting just how fast "immediately upon assuming office" must be. However, the Seventh District Court of Appeals did consider the issue in State ex rel. Gains v. Rossi
(Mar. 9, 1999), Mahoning App. No. 98-CA-51, a quo warranto action originating in that court and subsequently appealed on other issues to the Ohio Supreme Court. State ex rel. Gains v. Rossi, 86 Ohio St.3d 620,1999-Ohio-213.[5]
 {¶ 41} Gains involved the November 4, 1997 general election of Rossi to the village council of Lowellville, Ohio. Rossi had a 1988 federal felony conviction for attempted tax evasion. Rossi assumed office in January 1998. Soon thereafter, the Mahoning County Prosecutor requested an opinion from the Ohio Attorney General concerning Rossi's competence to hold office. The Attorney General issued an opinion on March 4, 1998 advising that a convicted felon, once elected, "is then obligated to remove any disqualification to holding the office." 1998 Ohio Atty.Gen.Ops. No. 98-013, at fn. 3. However, the opinion expressly did not address whether the person may "cure or remove that disqualification subsequent to taking office, and, by doing so, continue to hold office." Id. On March 25, 1998, Rossi filed an application to expunge his felony conviction, which was granted on July 23, 1998.
 {¶ 42} The Seventh District recognized that Rossi's delay in addressing his disqualification did not likely meet in strict terms the classic definitions of "immediately," such as "without interval of time: straightaway." Gains at *9. However, the court did find the facts fit a secondary definition, "as soon as," as found in Merriam-Webster's Collegiate Dictionary (1988), 579. Id. In doing so, the court noted, "While we are disturbed that Respondent waited almost three months after taking office to cure his defect in holding that office, we cannot say that this action should turn on a race to see which party files first. Respondent could have acted more responsibly and taken action to remove his disqualification as one of his first actions upon attaining the office he sought. However, as Respondent did act within a reasonably short period to cure his disqualification and given that we understand the time constraints involved in the legal process, we must find that under the facts before us Respondent removed his disqualification in a timely fashion and without unreasonable or unnecessary delay." Id. at *10.
 {¶ 43} Since the word "immediately" as used by the Ohio Supreme Court in Vana is not defined by statute or by the decision itself, we must apply the word's usual, normal or customary meaning unless the word has in some way acquired a technical or particular meaning. Chari v.Vore, 91 Ohio St.3d 323, 2001-Ohio-49; Klemas v. Flynn (1993),66 Ohio St.3d 249; R.C. 1.42. In doing so, we decline to use the secondary definition utilized by the Seventh Appellate District inGains. In an edition of the Merriam-Webster dictionary subsequent to the one used in Gains, which contains the identical secondary definition, the accompanying illustrative sentence is, "Immediately his intentions are understood, he may leave." Merriam-Webster's Third New International Dictionary, Unabridged (1993) 1129. We believe the more appropriate definition in this context to be "without interval of time : without delay STRAIGHTAWAY." Id.[6]
 {¶ 44} In further interpreting Vana's "immediately upon assuming office" language, we must also look at the context of the particular case. Here, in order for relator to remove his disability to hold office, he needed to receive an order from the Warren County Court of Common Pleas sealing the felony conviction pursuant to R.C. 2953.31 et seq. This process begins with the applicant filing a motion in the court. R.C. 2953.32(A)(1). Upon that filing, the court sets a date for a hearing and notifies the prosecutor, who can then file an objection with supporting reasons. R.C. 2953.32(B). R.C. 2953.32(C)(1) then requires the court to do all of the following:
 {¶ 45} "(a) Determine whether the applicant is a first offender or whether the forfeiture of bail was agreed to by the applicant and the prosecutor in the case. If the applicant applies as a first offender pursuant to division (A)(1) of this section and has two or three convictions that result from the same indictment, information, or complaint, from the same plea of guilty, or from the same official proceeding and result from related criminal acts that were committed within a three-month period but do not result from the same act or from offense committed at the same time, in making its determination under this division, the court initially shall determine whether it is not in the public interest for the two or three convictions to be counted as one conviction. If the court determines that it is not in the public interest for the two or three convictions to be counted as one conviction, the court shall determine that the applicant is not a first offender; if the court does not make that determination, the court shall determine that the offender is a first offender.
 {¶ 46} "(b) Determine whether criminal proceedings are pending against the applicant;
 {¶ 47} "(c) If the applicant is a first offender who applies pursuant to division (A)(1) of this section, determine whether the applicant has been rehabilitated to the satisfaction of the court;
 {¶ 48} "(d) If the prosecutor has filed an objection in accordance with division (B) of this section, consider the reasons against granting the application specified by the prosecutor in the objection;
 {¶ 49} "(e) Weigh the interests of the applicant in having the records pertaining to the applicant's conviction sealed against the legitimate needs, if any, of the government to maintain those records."
 {¶ 50} To assist the court obtaining the information necessary to make the R.C. 2953.32(C)(1)(a)-(e) findings, the court may request the appropriate probation department to make inquiries and written reports. R.C. 2953.32(B). If after consideration the court decides to grant the motion, it issues an order sealing all official records pertaining to the case, subject to certain limitations. R.C. 2953.32(C)(2).
 {¶ 51} It would be unrealistic to presume this process could be accomplished the instant relator assumed office on September 12, 2002. Nor does the language in Vana appear to require this. The Ohio Supreme Court did not hold that the disqualification be removed by the time the candidate assumes office, but rather be removed "immediately upon assuming office." Vana, 54 Ohio St.3d at 94. Therefore, subsequent to taking office, some reasonable length of time to clear the disqualification is contemplated. We find no statute or case law indicating that, during this limited time, the office holder forfeits any rights or claims to the office.
 {¶ 52} The facts of this case establish the Warren County Court of Common Pleas issued an order expunging relator's felony conviction 33 days after relator filed his initial application. We perceive this to be a reasonably expedient completion of the R.C. 2953.33 process, given the necessary steps.[7] We thus have little difficulty concluding under these facts that Vana would permit relator at least this long to remove his R.C. 2961.01 disqualification after assuming office on September 12, 2002.
 {¶ 53} More troublesome, however, is the added delay caused by relator's belated filing of the initial application. We understand that some amount of time is necessary just to get the application filed. We envision the newly-elected or appointed public officer choosing and then hiring an attorney. After gathering the appropriate information, the attorney must then prepare and file the motion in the proper court of common pleas.
 {¶ 54} However, after relator's September 12, 2002 appointment to council and his subsequent removal on September 26, 2002, relator waited until February 14, 2003 to file the initial application for expungement of his felony conviction. The application thus came just over five months after relator's appointment to council. Largely because of this, the resulting order from the court of common pleas came some six months and seven days after relator assumed office.
 {¶ 55} We do not believe this is what the Ohio Supreme Court had in mind when it wrote, "immediately upon assuming office." Vana,54 Ohio St.3d at 94. Vana further holds that if the disqualification is not timely removed, the officeholder forfeits that office. Id.
 {¶ 56} We acknowledge there are unusual facts present in this case that might explain relator's delay in making application for expungement. The former village of Sabina solicitor opined in 1995 that relator was legally qualified for the identical position relator now seeks. No further challenge occurred until respondents raised the issue in their November 20, 2002 answer to relator's complaint in quo warranto. However, because the qualification for public office is a matter of statewide concern, relator's reliance on the former solicitor's opinion cannot nullify the directive of R.C. 2961.01. Moore,69 Ohio St.2d at 89-90; Barnes, 3 Ohio App.3d at 45. Further, it is not respondents' duty to bring the issue to relator's attention, but rather relator's duty to meet the qualifications of the office. Id.
 {¶ 57} Because the nature of relator's incompetency to hold office stems from the "accomplished fact" of a prior felony conviction, it is unnecessary that a complaint and hearing first be held pursuant to R.C.3.07 prior to relator's forfeiture of office. Hughes v. Brown (1989),62 Ohio App.3d 417. See also Ridgeway v. Akron (App. 1940), 36 Ohio Law Abs. 46. Nor is it necessary that a quo warranto action first be brought before ousting relator. State ex rel. Attorney General v. Craig (1903),69 Ohio St. 236.
 {¶ 58} We now consider the effect of our holding that relator became incompetent to hold office with our earlier holding that Sabina council improperly rescinded its initial vote appointing relator to council. Although relator forfeited by law the right to hold office prior to the March 19, 2003 order sealing the record of his conviction, he still validly occupied the position subsequent to assuming office on September 12, 2002 for the reasonable period of time necessary to remove the disability. Because removal of the disability in this case involved obtaining an order from a common pleas court sealing a prior felony conviction pursuant to R.C. 2953.32, that time must reflect the time reasonably necessary for that process.
 {¶ 59} In this circumstance, the time reasonably necessary for the R.C. 2953.32 process includes the time necessary to file the initial application as well as time for the court of common pleas to rule. The Warren County Court of Common Pleas actually took a reasonably expedient 33 days to rule on relator's application and issue the order sealing relator's record. On the other hand, Sabina council improperly rescinded its vote and removed relator from office only two weeks after it had appointed him to council. Eleven days later, council by special session replaced relator with respondent Curtis.
 {¶ 60} We believe that under the circumstances of this case, the reasonable time necessary for relator to remove his disability pursuant to Vana extended beyond the time wherein Sabina council improperly removed relator from council and replaced him with respondent Curtis. Because we find that relator had not yet forfeited the office when council removed and replaced him, respondent Curtis' appointment remains improper. The Ohio Supreme Court has held that where a relator in quo warranto fails to prove entitlement to the disputed office, a writ may still issue to address the lawfulness of a respondent's claim to that office. Myers, 87 Ohio St.3d 545; Ethell, 165 Ohio St. 217. That relator may have subsequently become incompetent to hold office does not validate in retrospect the flawed appointment of Curtis.
 {¶ 61} Because we find that respondent Curtis was improperly appointed to council on October 7, 2002 and that subsequently relator became incompetent to hold the office, a vacancy presently exists for this particular seat on Sabina village council. Council may fill this vacancy pursuant to law. Nothing in this opinion would exclude either relator Powers or respondent Curtis from consideration, and nothing in this opinion limits council from consideration of only those two individuals.
 {¶ 62} Having carefully reviewed the arguments presented, and based upon the foregoing, relator's petition for writ in quo warranto is granted as it relates to a prayer of ouster of respondent Curtis from the office of council member for the village of Sabina. Relator's petition is denied as it relates to a prayer of execution of office for relator. A vacancy is declared for this particular seat on council, which may be filled pursuant to law.
YOUNG, P.J., and POWELL, J., concur.
[1] The parties do not describe the village as adopting a charter and, therefore, we analyze the issues pursuant to the Revised Code and appropriate case law. See State ex rel. Hanley v. Roberts (1985),17 Ohio St.3d 1, 3-4.
[2] Respondents raise specific issues regarding the validity of council member Kress' participation and the effect of relator's prior felony conviction on his competency to hold office. We shall consider those issues below.
[3] R.C. 731.43(A)(1) provides that if a village council fails to fill a vacancy within thirty days, the mayor of the village shall fill it by appointment.
[4] No party herein disputes that the office of village council member is an office of honor, trust or profit for R.C. 2961.01 purposes.
[5] The Ohio Supreme Court specifically noted in its decision that it was not deciding whether the office holder expunged the felony with sufficient diligence since the parties did not raise that issue on appeal.
[6] As an additional indication of the appropriate definition in this context, Merriam-Webster lists the word "immediately" as a conjunction rather than an adverb when defined in the manner applied by the Seventh Appellate District in Gains. Merriam-Webster's Third New International Dictionary, Unabridged (1993) 1129.
[7] We note that in Gains, the expungement process took 120 days from initial application to issuance of a court order.