**The STATE of Ohio**

v.

**BAKER et al.**▪

Clark County Municipal Court, Ohio.

Nos. 94 TRC 1255, 94 TRC 17025, 94 TRC 17801, 94 TRC 18631, 94 TRC 20611, 94 TRC 20905, 94 TRC 20931, 94 TRC 21090, 95 TRC 105, 95 TRC 371, 95 TRC 421, 95 TRC 725, 95 TRC 921 and 95 TRC 1505.

Decided Feb. 24, 1995.

50

52

54

---

*Denise L. Gretz,* Springfield Assistant Municipal Prosecutor, for plaintiff.
*Anthony Zaharieff,* for defendant.

RICHARD P. CAREY, Judge.

A number of defendants[1] have challenged the constitutionality of R.C. 4511.19, 4511.191, and related statutes born of S.B. No. 62 (1993, 120th General Assembly) and referred to loosely but commonly as the "new D.U.I. law." Although the facts vary among the cases—and accordingly the nature of a particular constitutional challenge—collectively the defendants have propounded a broad spectrum of concerns which this court chooses to consider together.

This court notes at the outset that a party challenging a legislative enactment has the burden of demonstrating its unconstitutionality. *Hudson v. Albrecht, Inc.* (1984), 9 Ohio St.3d 69, 9 OBR 273, 458 N.E.2d 852. The party faces a presumption that the legislation is constitutional. Before a court may declare it unconstitutional, it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible. *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59. To this end, doubts regarding the validity of a statute must be resolved in favor of the statute. *State ex rel. Swetland v. Kinney* (1982), 69 Ohio St.2d 567, 23 O.O.3d 479, 433 N.E.2d 217.

## DOUBLE JEOPARDY

The defendants first claim that once they have been placed under an administrative license suspension ("ALS") pursuant to R.C. 4511.191, the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution bars the "subsequent" prosecution for the underlying offense of driving while under the influence of alcohol or with a prohibited concentration ("OMVI") pursuant to R.C. 4511.19. R.C. 4511.191 directs an officer to cause an immediate suspension of the driver's license of a person arrested for OMVI who either refuses to submit to a requested chemical test or takes and "fails" the test by registering .10 percent or greater. Claiming that this license suspension constitutes a "punishment" from the state, the defendants conclude that a subsequent prosecution for OMVI is barred.

The Fifth Amendment reads in pertinent part as follows:

" * * * nor shall any person be subject for the same offence to be twice put in jeopardy of life and limb * * *."

---

1. Ronald L. Baker, Robert L. Hutchins, Michael A. Hirtzinger, Yusuf Muhammad, Brian D. Hastings, David E. Nott, Bobby J. Fawcett, William G. Saunders, Bennie R. Craft, Brett A. Lehman, Gurney L. Haines, Vicky L. Cox, Charice D. Howard, and Teresa A. Harris.

■ The Fifth Amendment protects against multiple punishments for the same offense. *Montana Dept. of Revenue v. Kurth Ranch* (1993), 511 U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767. In resolving double jeopardy issues, this court believes three questions must be addressed: first, whether each sanction is considered, in fact, a "punishment"; second, whether the various sanctions are directed toward the same act; and third, whether the sanctions are pursued in the same proceeding.

■ The threshold question herein, then, is whether the ALS imposed shortly after arrest constitutes a "punishment" which might preclude any subsequent "punishment," to wit: the penalties imposed upon a later conviction for OMVI. The fact that the imposition of the ALS may be deemed a civil sanction rather than a criminal sanction is of no consequence. What controls herein is whether the civil sanction, the ALS, is "solely remedial" in nature or whether it also has features which are retributive or deterrent in nature. *United States v. Halper* (1989), 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487. A civil sanction which is not "solely" remedial, but which rather serves the twin aims of retribution and deterrence, is considered "punishment" for purposes of the Fifth Amendment. *Id.*

A review of R.C. 4511.191 yields no conclusion other than that the ALS provision is designed, in part, to serve the aims of retribution and deterrence. Therefore, it is clearly a "punishment" which invokes the Double Jeopardy Clause.

The next consideration, then, is whether it is indeed the "same offense" which is twice being punished by the state. In other words, the court must inquire whether the *same act* constitutes a violation of the two distinct statutes—here, R.C. 4511.191 (ALS) and R.C. 4511.19 (OMVI). The court is guided in this respect by determining whether one statute requires proof of a fact which the other does not. *Missouri v. Hunter* (1983), 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535.

This court finds that an ALS imposed when one takes but fails the chemical test requires the same proof of facts as the offense of OMVI charged under R.C. 4511.19(A)(2), (A)(3) and (A)(4)—to wit: proof that the test results were .10 percent or more.[2] Within this scenario, the "same offense" is being punished.

This court finds, however, that an ALS imposed when one refuses the chemical test requires proof of *different* facts than the offense of OMVI charged under R.C. 4511.19(A)(1). In this instance, the question of fact concerns the refusal to

---

2. The court notes that this result varies depending on the nature of the test which is given. The court uses .10 percent for purposes of simplicity only.

submit to the chemical test. With respect to the OMVI offense, the question of fact concerns the impaired driving of the individual. In this context, two *different* offenses are being punished: the refusal and the impaired driving. The Double Jeopardy Clause is *not* invoked when the chemical test is refused.

■ The third issue which must be addressed in determining whether a double jeopardy ban is applicable when the test is taken is whether the two punishments sought by the state are imposed in the same proceeding or in separate proceedings. The Fifth Amendment precludes multiple punishments for the same offense *only if* pursued in separate proceedings. Conversely, the state may seek and obtain multiple punishments, including the full civil penalty and the full range of statutorily authorized criminal penalties, *if pursued in the same proceeding.* See *Hunter, Kurth Ranch,* and *Halper, supra; United States v. McCaslin* (W.D.Wash.1994), 863 F.Supp. 1299; *State v. Casalicchio* (1991), 58 Ohio St.3d 178, 569 N.E.2d 916.

In *McCaslin,* the defendant first had his house forfeited because of drug activity. Thereafter, criminal charges were filed for the same activity. In *Halper, supra,* the defendant was first convicted of filing fraudulent claims. Thereafter, the government brought a civil action for fines regarding the same filings. In *Kurth Ranch, supra,* defendants were convicted of drug charges. Thereafter, the government sought to collect "taxes" regarding the same drug charges. In each case, the subsequent sanction was barred insofar as the government was seeking the same in a "separate proceeding." The Supreme Court emphasized, nevertheless, that:

"Montana no doubt could collect its tax on the possession of marijuana * * * if it had not previously punished the taxpayer for the same offense, or, indeed, if it had assessed the tax in the *same proceeding* that resulted in his conviction." (Emphasis added.) *Kurth Ranch, supra,* 511 U.S. at ——, 114 S.Ct. at 1945, 128 L.Ed.2d at 778.

The state, therefore, may properly seek both a civil and a criminal sanction for the same conduct *if* done in the same proceeding.

It is this court's view that the civil sanction (the ALS) and the criminal sanction (via the OMVI charge) sought in the cases at bar are, indeed, part of the same proceeding:

1. A single arrest triggers both sanctions;

2. The arresting officer files both the OMVI charge and the ALS form ("B.M.V. 2255") together, which then are reviewed together at the defendant's initial appearance before the court;

3. Both matters are docketed together and generally considered together at a pretrial conference;

4. The dispositional hearing for the OMVI charge is generally also that for the ALS.

Although the two sanctions may occasionally demand separate "hearings," the two sanctions are sought in the same proceeding for purposes of Fifth Amendment review.

■ Accordingly, the Double Jeopardy Clause of the Fifth Amendment is not applicable herein and does not preclude the state from pursuing an ALS, as well as a criminal conviction and punishment for OMVI, pursuant to R.C. 4511.191 and 4511.19, respectively.

## DUE PROCESS

Defendants next challenge the constitutionality of the statutes on the grounds that they violate the Due Process Clause of the Fourteenth Amendment with respect to the following: the imposition of the Administrative License Suspension; the adequacy of the notice of the consequences arising from the taking or refusing to take the chemical test; the prehearing seizure of the vehicle driven; and the clarity of the legislation.

The Due Process Clause of the Fourteenth Amendment reads as follows:

" * * * nor shall any State deprive any person of life, liberty, or property, without due process of law * * *."

## ALS

R.C. 4511.191 directs an arresting officer to "immediately" suspend an arrestee's driver's license on behalf of the Bureau of Motor Vehicles either if the person refuses to take the chemical test or if he takes and fails the same. This suspension is effective prior to any court review, to wit: any hearing to consider an "appeal" of the ALS, which hearing itself may occur at the initial appearance or be reassigned for up to several weeks thereafter. Occupational driving privileges are not permitted during at least the first fifteen or thirty days [3] of the suspension. Defendants complain that this prehearing suspension deprives them of their property interests in their driver's licenses without due process of law.

■ In the state of Ohio, a license to operate a motor vehicle is a "privilege," and not an absolute property right. *Doyle v. Ohio Bur. of Motor Vehicles* (1990),

---

3. Work privileges are prohibited by statute during the first fifteen days if the driver took but failed the test and thirty days if the driver refused the test. These minimums will increase depending on the driver's traffic record.

51 Ohio St.3d 46, 554 N.E.2d 97. Nevertheless, it may not be taken away without that procedural due process required by the Fourteenth Amendment. *Bell v. Burson* (1971), 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90. In *Bell,* heavily relied on by the defendants, the United States Supreme Court required an opportunity for hearing *before* a license could be suspended for lack of proof of financial accountability by the driver. The suspension in *Bell,* however, was later distinguished by the Supreme Court from a suspension imposed to advance the state interest of "highway safety"—found by the court to be a paramount state interest. *Mackey v. Montrum* (1979), 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321.

In *Mackey,* much like the cases at bar, a Massachusetts statute directed that persons who refused to take a chemical test would have their licenses immediately suspended without a presuspension hearing. In upholding the constitutionality of this statute, the court considered three factors: first, the private interest that would be affected; second, the risk of erroneous deprivation of such interest by the summary suspension of the license; and third, the state's interest served by the summary procedures used, as well as the burdens that would result from requiring a presuspension hearing.

After considering Ohio's statute in this light, it is clear that Ohio's interest in public safety is substantially served by the summary suspensions imposed herein. As the *Mackey* court concluded, the very existence of this summary sanction serves as a deterrent to "drunk driving." Likewise, in promptly removing such drivers from the road, the sanction contributes to the safety of public highways. Like *Mackey,* this court acknowledges that a presuspension hearing would "substantially undermine the state interest in public safety" by affording the driver a "dilatory tactic"; moreover, it would generate a sharp increase in the number of hearings sought, adding a substantial fiscal and administrative burden on the state.

Moreover, the procedure followed under R.C. 4511.191 by the arresting officer, albeit summary in nature, does not present the risk of error so substantial as to require a full presuspension hearing. The predicates for summary suspension herein, to wit: an arrest, probable cause for the arrest, and a refusal to take the test, or, on the other hand, taking and failing the test, are accepted as "objective" facts by the United States Supreme Court. That court has explained that "something less than an evidentiary hearing is sufficient prior to adverse administrative action." *Mackey, supra,* 443 U.S. at 17, 99 S.Ct. at 2620, 61 L.Ed.2d at 333.

In assessing the third factor—the impact of the official action on the private interest involved—this court believes the duration of any potentially wrongful deprivation of a property interest to be an important factor. In *Mackey,* the Supreme Court felt it important that the driver could demand an "immediate" postsuspension hearing. Likewise, in *Dixon v. Love* (1977), 431 U.S. 105, 97 S.Ct.

1723, 52 L.Ed.2d 172, the court upheld a prehearing summary suspension, emphasizing that although a postsuspension hearing was not immediately provided, the Illinois statute in question permitted hardship occupational driving privileges pending the hearing.

By contrast, the Ohio statute in question not only fails to afford an "immediate" hearing of the summary suspension, it precludes any hardship occupational driving privileges pending the hearing. In doing so, it dramatically increases the impact of the state's official action and does not afford adequate due process protection. This court finds the flaw not to be in the summary suspension, but rather in the lack of an immediate hearing and/or the complete deprivation of hardship driving privileges pending a hearing. To that extent, R.C. 4511.191 is constitutionally deficient.

■ This court must then inquire whether that portion of the statute which remains valid "can be given effect without the invalid provision or application." *S. Euclid v. Jemison* (1986), 28 Ohio St.3d 157, 28 OBR 250, 503 N.E.2d 136, to wit: may the unconstitutional provisions be effectively severed from the constitutional provisions? This court believes that they are severable. Those provisions in R.C. 4511.191 which render it unconstitutional, to wit: R.C. 4511.191 *(I)(2)(b)* and *(I)(4)*—those sections precluding hardship occupational driving privileges pending the hearing—may be effectively severed from the balance of the statute. Accordingly, and as the same are unconstitutional, they are of no force and effect.

### NOTICE OF CONSEQUENCES

■ Defendants have complained that insofar as the "notice of consequences" form required by R.C. 4511.191(C) to be read to an OMVI arrestee prior to the administration of the chemical test does not recite "all" consequences of taking or refusing the test, it therefore violates the Due Process Clause. This court believes that the Due Process Clause is not implicated.

■ The defendants do not contend that the consequences forms are inaccurate. To the contrary, this court finds that the consequences are sufficiently stated. Moreover, the form specifically advises the arrestee that he/she may be subject to other penalties upon conviction. Due process demands nothing more. This complaint is not well taken.

### SEIZURE OF THE VEHICLE

■ R.C. 4511.195 provides that if a person is arrested for OMVI and, within five years of the alleged violation, he or she previously has been convicted of or pleaded guilty to one or more OMVI offenses, the arresting officer shall seize the

vehicle pending review by the court at the initial appearance—which must be held no later than five days after the arrest. Defendants contend that this summary impoundment without a prior hearing violates the Due Process Clause. This court is inclined to disagree.

The United States Supreme Court has ruled that under certain circumstances immediate seizure of a property interest, without an opportunity for prior hearing, is constitutionally permissible. *Astol Calero–Toledo v. Pearson Yacht Leasing Co.* (1974), 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452. That court has specified that a hearing may be "postponed" until after the seizure of property when the state has an important interest and need in its immediate seizure and permits this action only by its law enforcement officers under a narrowly drawn statute. *Id.* at 678, 94 S.Ct. at 2089, 40 L.Ed.2d at 465.

This court need not again review the broad acceptance of the state's paramount interest in highway safety and its legitimate need to remove impaired drivers from its roads by summary suspension of their driver's licenses. This interest and need are compounded when the driver is a repeat offender. Clearly, the state has a significant interest in promptly removing from its highways the instrument of a repeat offender's crime, the vehicle itself. This court accepts the premise that the prompt seizure required by the statute enhances highway safety insofar as it deters persons from impaired driving, precludes the continued illegal use of the property, and preserves the property for later criminal sanctions.

Moreover, this court is satisfied that the standards triggering immediate seizure of a vehicle are sufficiently narrow in scope and definition, thereby limiting the potential for error. An officer may seize the property only if a person is arrested for OMVI *and* that person has previously been convicted of OMVI within the preceding five years. These factors, deemed "objective" by the Supreme Court (see *Mackey, supra*), act to reduce the potential abuse of discretion on behalf of the state.

Finally, the statute requires the seizure to be reviewed by the court at the initial appearance—which must be held within five days of the arrest, and, in fact, often occurs within twenty-four hours of the same. Not insignificant is the fact that the court is afforded great discretion in considering the release of the vehicle pending disposition of the OMVI offense. R.C. 4511.195(B)(1).

Upon consideration of the circumstances surrounding immediate seizure of the vehicle under R.C. 4511.195, this court rules that the postponement of the hearing until after seizure of the property does not violate the Due Process Clause of the Fourteenth Amendment.

### CLARITY OF LEGISLATION

██ The defendants argue that R.C. 4511.191 should be rendered void for vagueness, as the legislative intent is not clear. They specifically cite the lack of statutory characterization of the ALS procedure as "civil" in nature or "criminal" in nature, resulting in courts applying different rules of procedure according to their respective interpretations.

While this court does not champion the legislation as a pillar of clarity, nevertheless its intent is sufficiently unambiguous. It is specific as to the predicates which will cause summary suspension, and it provides for an appeal of the same to the court at initial appearance. Though it is true that it does not label this appeal as "civil" or "criminal," this omission is not of constitutional import. To the contrary, it may have been inadvertent providence that the courts, and not the legislature, devise the nature of the procedure to be followed. Regardless of its label, the appellate remedy remains intact. The Due Process Clause is not implicated.

### EQUAL PROTECTION

The defendants next challenge the constitutionality of the legislation on the grounds it violates the Equal Protection Clause of the Fourteenth Amendment. They cite four areas: first, that those convicted of OMVI are subject to mandatory jail time unlike those convicted of many felonies; second, the ALS tends to be harsher in effect on rural offenders than urban offenders; third, it unlawfully differentiates between rental vehicles and other vehicles with respect to sanctions; and fourth, it improperly precludes the termination of the ALS of a driver who takes the chemical test and later is convicted upon a plea to the underlying OMVI.

██ The Fourteenth Amendment's Equal Protection Clause directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This clause concerns only that legislation which affects similarly situated people differently. In those instances, the separate classifications created by the legislation may be set aside "only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them." *Clements v. Fashing* (1982), 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508, 515. The inquiry, then, is twofold: first, whether there are class distinctions within the legislation; second, whether these distinctions bear some rational relationship to a legitimate governmental objective. *State Farm Mut. Auto. Ins. Co. v. Molnar* (1990), 54 Ohio St.3d 90, 562 N.E.2d 156.

■ With this in mind, this court is not prepared to subscribe to defendants' position that persons convicted of OMVI are "similarly situated" to those persons convicted of felony offenses. It is not enough that they share in the dubious distinction of having been convicted of a crime. Something more is required. This notwithstanding, the mandatory jail sentence upon conviction of OMVI clearly furthers the legitimate state goal of deterring impaired driving. Moreover, it is well settled that the legislature has full authority to define the full range of criminal punishments—even when establishing minimum mandatory sentences and limiting judicial discretion. *Chapman v. United States* (1991), 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524; *State ex. rel. Owens v. McClure* (1976), 48 Ohio St.2d 1, 2 O.O.3d 1, 354 N.E.2d 921.

■ The same can be said of defendants' contention that the legislation affects people differently depending on the location of their residence. Defendants err by trying to create two broad classifications—rural residency and urban residency. The ramifications of the statutory sanctions, by their nature, are so inherently subject to personal circumstance that broad classification is unworkable and inappropriate. This is necessarily true, albeit perhaps unfortunate, with any scheme of punishment. People always have been and always will be affected differently. The legislation will not fail on this ground.

■ The third branch of the challenge on equal protection grounds criticizes the provision in R.C. 4511.195(B)(1) which exempts vehicles leased for a period of thirty days or less from the immediate seizure to which nonleased vehicles are subject. This court, however, finds a rational relationship between this distinction and the state's legitimate goal of deterring impaired driving. Clearly the impact of deterrence by seizure is significant only when the driver has an interest—property or otherwise—in the seized vehicle. This interest is essentially nonexistent when a vehicle is being leased on a short-term basis. To that end, the legislation is not constitutionally flawed.

The final branch of this particular challenge concerns the different statutory treatment accorded a person who refuses the chemical test as opposed to the person who takes but fails the test, when both are later convicted by way of a plea to OMVI. Under the current statutory scheme, the ALS imposed in the first instance automatically terminates. R.C. 4511.191(K). However, the ALS imposed in the second instance does not terminate and later results in an additional $250 reinstatement fee.[4]

---

4. The court notes that this occurs only when the defendant is convicted after a guilty or no contest plea to OMVI. If the defendant is convicted after a trial on the merits, then the two are treated alike. There is no termination.

■ Once both persons are convicted of OMVI, they become "similarly situated" and must be treated alike unless distinguishing them bears a rational relationship to a legitimate governmental interest. *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 550 N.E.2d 181. In this respect, this court believes the purpose of the ALS is twofold: first, the immediate removal of "impaired" drivers from the roadways; second, to encourage drivers to take the chemical test. Affording harsher treatment to the driver who takes the test than the driver who refuses the test bears no rational relationship to the state's interest herein. Rather, it is wholly inconsistent with the legislative purpose.

■ In this limited context, wherein the legislation precludes the termination of the ALS when the driver who takes the test is later convicted upon a plea to the underlying OMVI, this court finds the same to violate the Equal Protection Clause of the Fourteenth Amendment. That portion of the legislation is of no force and effect.

## *EIGHTH AMENDMENT*

Defendants again attack the statutory sanctions, citing instead the Eighth Amendment. They argue that the mandatory jail sentence provided under the statute is unconstitutionally disproportionate to the sentencing parameters of other misdemeanors and many felony offenses; and second that the immobilization and/or forfeiture of vehicles for repeat offenders constitutes excessive fines and is therefore constitutionally flawed. This court disagrees.

The Eighth Amendment reads:

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

■ With respect to the question of mandatory jail for OMVI offenders, it is well settled that a punishment does not violate the prohibition against cruel and unusual punishments unless it is so greatly disproportionate to the offense as to shock the sense of justice in the community. *State v. Young* (1988), 37 Ohio St.3d 249, 525 N.E.2d 1363. Rather than being shocked, communities across Ohio and the nation are demanding tough penalties for OMVI offenders with the hope of deterring impaired driving. To this end, mandatory jail sentences for OMVI may seem harsh, but they are not unconstitutional.

■ The question then becomes whether the immobilization and/or forfeiture of the vehicles driven by repeat offenders constitutes an "excessive fine." These sanctions, traditionally considered civil in nature, are herein automatically implicated within the context of the criminal proceedings. Much like the summary administrative license suspension, the sanctions are punitive in nature and therefore invoke the Excessive Fines Clause of the Eighth Amendment. This

clause limits the state's power to extract payments, whether in cash or in kind, as punishment for an offense. See *Austin v. United States* (1993), 509 U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488; *State v. Casalicchio* (1991), 58 Ohio St.3d 178, 569 N.E.2d 916.

■ Justice Scalia, in concurring in *Austin, supra*, reasoned that the principal factor to consider in determining whether a forfeiture is "excessive" should be the extent to which the property is related to the offense. *Id.*, 509 U.S. at ——, 113 S.Ct. at 2815, 125 L.Ed.2d at 510. In his approach, the value of the property is irrelevant if duly related: it is subject to forfeiture "whether made of the purest gold or the basest metal." *Id.*

■ This court chooses to follow Scalia's lead.[5] Using this approach, there is little debate that the sole instrument of the offense of OMVI is the vehicle. Without it, there is no offense. As the property is so inextricably related to the offense, it would be subject to forfeiture or immobilization under Scalia's approach. Moreover, the United States Supreme Court has added that it is appropriate this issue be considered in light of the driver's past criminal activities. *Alexander v. United States* (1993), 509 U.S. ——, 113 S.Ct. 2766, 125 L.Ed.2d 441. In view of the fact that immobilization may not occur until a driver is convicted of at least a second OMVI offense during a five-year period, and that forfeiture is authorized only when a driver commits his fourth OMVI offense within a five-year period, this court cannot find either sanction to be "excessive." Accordingly, the legislation does not violate the Eighth Amendment.

## EX POST FACTO LEGISLATION

The legislation in question went into effect on September 1, 1993. It provides enhanced penalties upon conviction of OMVI when the driver has a prior like offense within the preceding five years. As this legislation necessarily contemplates the consideration of a conviction prior to its enactment, the defendants argue that it therefore conflicts with Section 10, Article I of the United States Constitution prohibiting "ex post facto" laws, and Section 28, Article II of the Ohio Constitution prohibiting "retroactive" laws. In so arguing, defendants misapply these prohibitions.

■ The purpose of these prohibitions is to prevent the state from imposing "new" duties and obligations upon a person's past conduct, with the goal of ensuring that a person may rely upon the law as it is written. *Personal Serv. Ins. Co. v. Mamone* (1986), 22 Ohio St.3d 107, 22 OBR 189, 489 N.E.2d 785. The legislation at bar applies no additional penalty for "past" violations. Rather, it

---

5. This court notes in passing that designing some style of valuation approach would be, in practice, unworkable and subject to a "red-book" mentality.

serves fair notice as to the measure of the punishment for "future" violations. This practice has long been accepted in Ohio. *Blackburn v. State* (1893), 50 Ohio St. 428, 36 N.E. 18.

To this end, it is well settled that the state is justified in punishing a recidivist more severely than it punishes a first offender. *Solem v. Helm* (1983), 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637. The state has chosen to do just that with respect to impaired driving. Moreover, the present legislation does nothing more than restate the enhanced penalties which have been in effect for several years. This court is not inclined to fault this approach under the theory that it now should be characterized as an ex post facto or retroactive law.

## HOME RULE

Defendants next raise the issue that insofar as the legislation creates sanctions involving license suspension and immobilization of vehicles upon conviction of a municipal ordinance relating to OMVI, it therefore improperly usurps the power of the municipality for self-government as set forth in Section 7, Article XVIII of the Ohio Constitution. This court disagrees. Section 7 reads:

"Any municipality may frame and adopt or amend a charter for its government and may, *subject to the provisions of section 3* of this article, exercise thereunder all powers of local self-government." (Emphasis added.)

Section 3, Article XVIII limits this authority by precluding the municipalities from adopting regulations which are in conflict with state laws. The defendants have not demonstrated the existence of any such conflict. Nor have they demonstrated how this legislation exceeds the broad authority of the state to define the full range of sanctions to be imposed in this area. In short, the defendants have not met their burden in showing how this legislation violates Article XVIII of the Ohio Constitution.

## CONFLICT WITH EVIDENCE RULE 802

Section 5(B), Article IV of the Ohio Constitution provides that the Supreme Court "shall prescribe rules governing practice and procedure in all courts of the state. * * * All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." In accordance with this provision, the Supreme Court has prescribed Evid.R. 802, which provides that "[h]earsay is not admissible except as otherwise provided * * * by statute enacted by the General Assembly *not in conflict* with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." (Emphasis added.)

Defendants complain that insofar as R.C. 4511.191(D)(3) directs a court to admit and consider the sworn report of the officer concerning the chemical test (B.M.V. 2255) during the driver's appeal of the ALS imposed, it is in conflict with Evid.R. 802. They explain that the statute permits the admission of this hearsay report when it otherwise would be excluded by the Ohio Rules of Evidence. A closer examination of these rules reveals that this may not be the case.

Evid.R. 802 provides that hearsay is not excluded when it is of the following nature, to wit:

" * * * Reports, statements, * * * in any form, of public offices or agencies, setting forth * * * matters observed pursuant to duty imposed by law as to which matters there was a duty to report * * *." Evid.R. 803(8).

As applied to the report in question, when an officer makes an arrest for OMVI and requests the arrestee to submit to a chemical test, the officer must, under law, complete a "report" (B.M.V. 2255) containing certain "statements" and other "matters" he observes and concerning the circumstances surrounding the chemical test. To this end, the officer acts on behalf of the Bureau of Motor Vehicles— a "public agency"—and must, under law, forward this report to the same. This report, then, meets the predicates of admission pursuant to Evid.R. 803(8), *so long as* the hearing is "civil" rather than "criminal" in nature.

Evid.R. 803(8), by way of explanation, provides an exception to the above when the report includes observations of law enforcement officers *and* is sought to be admitted by the state in a "criminal case." Although the ALS is commenced as part of the same "proceedings" as the criminal charge and traverses the judicial system concurrently, it nevertheless constitutes an independent civil sanction. Hearings concerning the same must be deemed "civil" in nature, *Hoban v. Rice* (1971), 25 Ohio St.2d 111, 54 O.O.2d 254, 267 N.E.2d 311, and as such would allow the admission of B.M.V. 2255.

Accordingly, this court finds no conflict between the legislation and the Ohio Rules of Evidence.[6]

## SEPARATION OF POWERS

In their final argument before this court, the defendants challenge that provision of R.C. 4511.191(H)(1) which precludes the court from granting a "stay" of the ALS pending the outcome of the appeal of the same. This, they argue, improperly encroaches upon the constitutionally granted powers of the judiciary. This court agrees.

---

6. It may also be noted that the practical effect of R.C. 4511.191(D)(3) is merely to raise a presumption of validity which shifts the burden of going forward with the evidence to the driver. In either respect, the statute does not violate the Ohio Constitution.

While the courts will generally give great deference to legislation, the Ohio Supreme Court has also emphasized that "the administration of justice by the judicial branch of the government may not be impeded by the other branches of government in the exercise of its powers. * * *" *State ex. rel. Edwards v. Murray* (1976), 48 Ohio St.2d 303, 2 O.O.3d 446, 358 N.E.2d 577. In giving the court jurisdiction to hear the appeal of an ALS, while at the same instant depriving the court of jurisdiction to act pending that appeal, the legislature has indeed impeded the administration of justice.

While the issue appears to be one of first impression in the state of Ohio, similar encroachments garnered some attention in at least three other states: Kentucky, Illinois and Massachusetts. The Supreme Court in each of those states found statutes to be unconstitutional which prohibited a court from granting a stay of a sanction pending its review: *Smothers v. Lewis* (Ky.1984), 672 S.W.2d 62; *Ardt v. Illinois Dept. of Professional Regulation* (1992), 154 Ill.2d 138, 180 Ill.Dec. 713, 607 N.E.2d 1226; *Commonwealth v. Yameen* (1987), 401 Mass. 331, 516 N.E.2d 1149. This court believes in the premise articulated by those courts that once having obtained jurisdiction of a cause of action, a court has inherent power to do all things reasonably necessary to secure the administration of justice in the case before it.

This court has previously noted the lapse of time generally occurring between the request for an appeal and the hearing. To divest the judiciary of the power to grant a discretionary stay pending this hearing, under the circumstances of this delay, increases the potential for irreparable harm to an innocent appellant. The discretion of the judiciary may not be so compromised.

Accordingly, that portion of R.C. 4511.191(H)(1) which prohibits the granting of a "stay" is unconstitutional and is of no force and effect.

## CONCLUSION

In passing this new legislation, the state has significantly raised the stakes for those who choose to drive though impaired by the use of drugs or alcohol. While this endeavor may have tested the constitutional limits in this area, this court cannot conclude that it has exceeded the same, save for the three aforementioned respects, to wit: the lack of discretion afforded the courts in granting hardship occupational driving privileges pending the appeal of the ALS; the divestiture of the court's inherent power to stay the ALS pending its appeal; and the lack of termination of the ALS of a driver taking the test who later is convicted upon a plea to OMVI. In these three limited respects, the legislation is unconstitutional and therefore not enforceable. Otherwise, the legislation stands as constitutionally valid.

For the reasons stated above, each defendant's motion to dismiss on constitutional grounds is overruled.

*So ordered.*