CITY OF AKRON, Appellee,

v.

KIRBY, Appellant.

[Cite as *Akron v. Kirby* (1996), 113 Ohio App.3d 452.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17307.

Decided Feb. 28, 1996.

454

*Douglas J. Powley,* Summit County Prosecuting Attorney and *Rhonda Hendricks,* Assistant Prosecuting Attorney, for appellee.

*Edmund M. Sawan,* for appellant.

QUILLIN, Judge.

William D. Kirby appeals from his convictions for driving under the influence, driving with a prohibited breath-alcohol content, and driving under suspension. We affirm.

In October 1994, a young woman flagged down Sergeant Richard Warren of the Akron Police Department, who was on a routine patrol. The woman pointed to a van that was being driven by Kirby and told Sergeant Warren that Kirby attempted to solicit her. While following the van, Sergeant Warren observed Kirby changing lanes twice without signaling. Sergeant Warren stopped the van because of the traffic violations and to question Kirby about the statements made by the woman. Another police car stopped to assist in the investigation.

When Sergeant Warren asked Kirby for his driver's license, he noticed that Kirby smelled of alcohol. Sergeant Warren then asked Kirby if he had been drinking, and Kirby said that he had had one or two drinks. Sergeant Warren

looked inside the van and observed an ignition interlock device, which apparently prevented Kirby's van from starting if his breath indicated a certain level of alcohol. Sergeant Warren ran a check on Kirby's driver's license and discovered that Kirby had "[n]o driving privileges indefinitely." Kirby was asked to step out of the van. According to one officer at the scene, Kirby's eyes were bloodshot, his speech was somewhat slow and slurred, and he wobbled back and forth. The officers placed Kirby in the backseat of a police car.

A search of the van revealed an air hose attached to a small air compressor in the back of the van. The air hose was long enough to reach the ignition interlock device in the front of the van. A further search of the van uncovered empty beer cans, coolers filled with beer, and some marijuana. An officer asked Kirby to try to start his van through the ignition interlock device by blowing into it, but the van would not start. Kirby was placed under arrest and then transported to the police station.

At the police station, Kirby was given a breathalyzer test that indicated his breath-alcohol content was .146 grams per two hundred ten liters of breath. Kirby's driver's license was immediately seized, and he was informed that his license was placed under an administrative license suspension ("ALS"), pursuant to R.C. 4511.191. In addition, Kirby's vehicle was seized pursuant to R.C. 4511.195. Kirby was charged with driving under the influence and driving with a prohibited breath-alcohol content ("OMVI"), driving under suspension, improper lane change, and possession of marijuana.

In December 1994, Kirby filed a motion to dismiss and/or suppress, a motion to suppress statements and evidence, and a motion to declare statute unconstitutional. The trial court denied all three motions. In May 1995, Kirby pleaded no contest to driving under the influence, Akron City Code 73.01(A)(1), driving with a prohibited breath-alcohol content, Akron City Code 73.01(A)(3), and driving under suspension, Akron City Code 71.07(C). Kirby was found guilty of those charges, and the remaining charges were dismissed. Kirby now appeals, raising two assignments of error.

### Assignment of Error I

"The trial court erred in overruling Appellant's motion to declare statute unconstitutional."

In his first assignment of error, Kirby makes a broad attack on the constitutionality of the penalty provisions of Akron's OMVI laws applicable to him and the provisions of R.C. 4511.191, which permitted the administrative license suspension of his driving privileges.

We note initially that when a legislative enactment designed to promote the public health, safety, and welfare is challenged, the challenger must overcome a

strong presumption of constitutionality. *State v. Anderson* (1991), 57 Ohio St.3d 168, 171, 566 N.E.2d 1224, 1226. Thus, "[t]he party alleging that a statute is unconstitutional must prove this assertion beyond a reasonable doubt in order to prevail." *Id.*

## A

Kirby challenges the constitutionality of the OMVI laws on the grounds that they violate the Due Process Clause of the Fourteenth Amendment pertaining to the following: the imposition of the ALS; the prehearing seizure of the vehicle driven; the adequacy of the notice of the consequences resulting from taking or refusing to take the chemical test; and the clarity of the legislation.

If a driver has been arrested for OMVI, R.C. 4511.191 provides for the immediate suspension of the arrestee's driver's license if the arrestee refuses to submit to a chemical test or if the arrestee submits to the test and fails it. Kirby claims this prehearing suspension deprives him of his property interest in his driver's license without due process of law. We disagree.

It is clear that the Due Process Clause applies to the state's suspension of a driver's license. *Mackey v. Montrym* (1979), 443 U.S. 1, 10, 99 S.Ct. 2612, 2616–2617, 61 L.Ed.2d 321, 329. Thus, to determine whether procedural due process requires a hearing prior to an administrative license suspension, three factors must be considered: (1) the private interest that will be affected; (2) the risk of an erroneous deprivation of such interest by the immediate suspension of the license, and the probable value of additional or substitute safeguards; and (3) the state's interest served by the suspension procedures used, including the burdens that would result from requiring a presuspension hearing. See *Mathews v. Eldridge* (1976), 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33.

The Tenth District Court of Appeals, in applying this balancing test, held that the ALS provisions of R.C. 4511.191 do not violate due process. *Groveport v. Lovsey* (Sept. 5, 1995), Franklin App. No. 95APC01–83, unreported, 1995 WL 527769. In *Lovsey*, the court concluded that the burden placed on a defendant by the ALS, pursuant to R.C. 4511.191, is not so great as to require prior notice and an opportunity to be heard; that the procedures followed by the arresting officer do not present a risk of error so great as to require a full presuspension hearing; and that the state has a substantial interest in promoting public safety by removing impaired drivers from the state's highways. We agree with that court's reasoning, and similarly conclude that the ALS provisions do not violate the Due Process Clause.

Akron City Code 73.06 requires an arresting officer to seize and impound the vehicle driven by a person arrested for an OMVI violation who has had at

least one prior conviction in the past five years, regardless of whether the offender is the owner of the vehicle. Kirby claims he is being deprived of his property without a hearing in violation of the Due Process Clause.

The United States Supreme Court has held that, in some circumstances, immediate seizure of a property interest, without an opportunity for prior hearing, is constitutionally permitted. *Calero–Toledo v. Pearson Yacht Leasing Co.* (1974), 416 U.S. 663, 678, 94 S.Ct. 2080, 2089, 40 L.Ed.2d 452, 465. A hearing may be postponed when the seizure is necessary to secure an important state interest, there is a special need for prompt action, and the person initiating the seizure is a government official responsible for determining that it is necessary and justified in the particular instance. *Id.*

The state clearly has a strong interest in keeping impaired drivers off the road, and this interest justifies prompt action. Furthermore, the summary seizure of the vehicle is carried out by a law enforcement officer under a narrowly drawn statute. The driver's record of prior OMVI violations is easily verifiable, the arrest may be weighed according to objective criteria, there are extensive notice procedures, and persons affected by the seizure are given a prompt opportunity to be heard. Considering the circumstances of the summary seizure, we conclude that the seizure provisions of Akron City Code 73.06 do not violate the Due Process Clause.

R.C. 4511.191(C)(1) requires a person arrested for OMVI to be advised of the consequences of taking or refusing to take a chemical test. Kirby argues that the form adopted by the Bureau of Motor Vehicles for this purpose is deficient because it does not recite *all* the consequences of the process. The form does state, however, that the arrestee may be subject to other penalties upon conviction, and thus satisfies the Due Process Clause. See *State v. Baker* (1995), 70 Ohio Misc.2d 49, 61, 650 N.E.2d 1376, 1384–1385.

Kirby finally argues that R.C. 4511.191 violates his right to due process of law because the legislative intent of this statute is "not clear." Kirby points out that the legislature failed to categorize the appeal of an ALS as "civil" in nature or "criminal" in nature, resulting in courts' applying different rules of procedure depending on their own interpretations of the statute.

The statute is specific with respect to the predicates that will cause summary suspension, and it provides for an appeal to the same court at the defendant's initial appearance. While the statute does fail to label this appeal as "civil" or "criminal," this does not render it unconstitutional. See *Baker,* 70 Ohio Misc.2d at 63, 650 N.E.2d at 1386; *State v. Sanders* (Sept. 29, 1995), Miami App. Nos. 95CA11 and 95CA12, unreported, 1995 WL 634371. As one court has noted, "it may have been inadvertent providence that the courts, and not the legislature,

devise the nature of the procedure to be followed." *Baker,* 70 Ohio Misc.2d at 63, 650 N.E.2d at 1386. Even without a label, the appellate remedy remains intact, and the statute affords the OMVI offender due process of law. See *id.*

## B

Kirby next challenges the constitutionality of the legislation on the grounds it violates the Equal Protection Clause of the Fourteenth Amendment. He cites three situations: that those convicted of OMVI are subject to mandatory prison time unlike those convicted of many felonies; that the ALS tends to have a harsher effect on rural offenders than urban offenders; and that it unlawfully differentiates between rental vehicles and other vehicles with respect to vehicle seizure.

Under the Equal Protection Clause of the Fourteenth Amendment, no state shall "deny to any person within its jurisdiction the equal protection of the laws." If a legislative enactment involves neither a suspect classification nor a fundamental right, it will survive equal protection analysis if it bears a rational relationship to a legitimate governmental interest. *State ex rel. Vana v. Maple Hts. City Council* (1990), 54 Ohio St.3d 91, 92, 561 N.E.2d 909, 910–911. Unless the law is wholly irrelevant to achievement of that interest, it must be upheld. *Id.*

Kirby's first equal protection challenge centers on the mandatory incarceration for OMVI convictions, which are misdemeanors. Kirby notes that mandatory incarceration is not required for some felonies, including voluntary manslaughter, felonious assault, gross sexual imposition, burglary, or robbery. Thus, Kirby argues, OMVI violations are treated more harshly than some felonies, which are far more serious offenses.

The Equal Protection Clause, however, concerns only that legislation which affects similarly situated people differently. *Baker,* 70 Ohio Misc.2d at 63, 650 N.E.2d at 1386. Kirby has failed to show that persons convicted of OMVI offenses are similarly situated to those persons convicted of felony offenses. The city, therefore, need only demonstrate some rational basis for this provision. We conclude that the mandatory jail sentence for OMVI offenders furthers the state's legitimate interest in deterring drunk driving, and the provision is constitutional.

Kirby next claims the application of the ALS is unconstitutional because it discriminates against persons in different parts of the state. According to Kirby, because persons living in rural areas do not have access to public transportation, the ALS imposes a greater burden upon them than it does upon urban residents. We fail to see, however, how a suspect classification or a fundamental right is

involved here. See *Sanders, supra.* Although the ALS may place a greater burden on some Ohio residents, the Equal Protection Clause is not violated. Furthermore, the ALS is rationally related to a legitimate state interest: curbing the danger posed by impaired drivers. The legislation is therefore not constitutionally flawed.

Finally, Kirby, without citing any authority, argues that the provision in R.C. 4511.195(B)(1) that exempts vehicles leased for a period of thirty days or less from the immediate seizure to which nonleased vehicles are subject is unconstitutional. Because this provision does not create a constitutionally suspect classification and does not deny a fundamental right, we must apply the rational basis test. The state has a legitimate interest in deterring impaired driving, and the seizure of an OMVI offender's vehicle serves this interest. Thus, there is a rational relationship between this distinction and the state's goal of deterring impaired driving. See *Baker,* 70 Ohio Misc.2d at 64, 650 N.E.2d at 1386–1387.

## C

■ Kirby further attacks the statutory sanctions, citing this time the Eighth Amendment. He argues that the mandatory prison sentence provided for violations of Akron City Code 73.01(A)(1) and 73.01(A)(3) is unconstitutionally disproportionate to the rest of the sentencing scheme in the Akron City Code, especially because there are some felonies which have penalties that do not require any actual incarceration. Kirby also argues that the forfeiture of vehicles for repeat offenders constitutes excessive fines and is therefore unconstitutional.

Regarding the question of whether mandatory jail for OMVI offenders, a punishment does not violate the Eighth Amendment's prohibition against cruel and unusual punishments unless it is so greatly disproportionate to the offense as to shock the sense of justice in the community. *State v. Young* (1988), 37 Ohio St.3d 249, 256, 525 N.E.2d 1363, 1371–1372. While a mandatory sentence of up to thirty days in jail may seem harsh to some, we cannot say it rises to the level of disproportionality so as to shock the community's sense of justice. See *Lovsey, supra; Sanders, supra.*

■ The next question is whether the forfeiture of the vehicles driven by repeat offenders constitutes an "excessive fine." A principal factor to consider in determining whether a forfeiture is "excessive" under the Eighth Amendment is the extent to which the property is related to the offense. See *Baker,* 70 Ohio Misc.2d at 66, 650 N.E.2d at 1388, citing *Austin v. United States* (1993), 509 U.S. 602, 628–629, 113 S.Ct. 2801, 2815–2816, 125 L.Ed.2d 488, 510 (Scalia, J., concurring).

Clearly, the vehicle of a driver convicted of OMVI is inextricably related to the offense itself. Without it, there is no offense. It is reasonable, therefore, that the vehicle may be subject to forfeiture. See *Baker* at 66, 650 N.E.2d at 1388. Considering that forfeiture is authorized only when a driver commits a fourth OMVI offense within a five-year period, we cannot find this sanction to be "excessive." *See id.*

■ Kirby further argues the hidden costs of storage, retesting, reapplications, reinstatement, and additional insurance exceed the maximum fine prescribed by the ordinances. While these "hidden costs" may create a pecuniary loss to the offender, the focus of the Excessive Fines Clause is limited to monetary punishments. *Sanders, supra,* citing *Browning–Ferris v. Kelco Disposal* (1989), 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219. These hidden costs represent the costs of exercising the privilege to operate a motor vehicle after an OMVI conviction. Therefore, they are not a "punishment" and do not violate the Eighth Amendment. See *Sanders, supra.*

## D

■ The recently enacted legislation in question provides enhanced penalties upon conviction of OMVI when the driver has a prior like offense within the preceding five years. As this legislation necessarily considers convictions prior to its enactment, Kirby argues that it therefore conflicts with Section 10, Article I of the United States Constitution prohibiting "ex post facto" laws and Section 28, Article II of the Ohio Constitution prohibiting "retroactive" laws.

The Ohio Supreme Court has held:

"The prohibition against retroactive laws is not a form of words; it is a bar against the state's *imposing new duties and obligations upon a person's past conduct and transactions,* and it is a protection for the individual who is assured that he may rely upon the law as it is written and not later be subjected to new obligations thereby." *Personal Serv. Ins. Co. v. Mamone* (1986), 22 Ohio St.3d 107, 109, 22 OBR 189, 190–191, 489 N.E.2d 785, 787, citing *Lakengren v. Kosydar* (1975), 44 Ohio St.2d 199, 201, 73 O.O.2d, 502, 503, 339 N.E.2d 814, 815.

The penalty enhancement provisions do not punish the past conduct; instead, they merely increase the severity of a penalty imposed for an OMVI violation that occurs after passage of the enhancement legislation. Ohio courts have long accepted recidivist statutes. *Baker,* 70 Ohio Misc.2d at 67, 650 N.E.2d at 1388–1389, citing *Blackburn v. State* (1893), 50 Ohio St. 428, 36 N.E. 18. Moreover, the United States Supreme Court has held that the state is justified in punishing a recidivist more severely than it punishes a first offender. *Solem v. Helm* (1983), 463 U.S. 277, 296, 103 S.Ct. 3001, 3012–3013, 77 L.Ed.2d 637, 653. We thus

conclude that Akron City Codes 73.08 and 73.09 are not ex post facto laws, nor are they retroactive laws.

## E

█ Kirby argues that penalties for an OMVI violation are matters of local self-government and therefore reserved to municipalities by the Home Rule Amendment to the Ohio Constitution, Section 7, Article XVIII of the Ohio Constitution.

Section 7, Article XVIII of the Ohio Constitution states:

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

Section 3, Article XVIII of the Ohio Constitution, however, precludes municipalities from adopting regulations that would conflict with state laws. Thus, in any conflict, state law prevails. *Canton v. Whitman* (1975), 44 Ohio St.2d 62, 73 O.O.2d 285, 337 N.E.2d 766, paragraph two of the syllabus. Furthermore, Kirby has failed to show how this legislation exceeds the state's broad authority to specify the full range of penalties in this area. Kirby has therefore failed to demonstrate how this legislation violates the Ohio Constitution's Home Rule Amendment.

## F

█ Kirby claims the provisions of R.C. 4511.191(D)(3) permitting the arresting officer's "sworn report" to be admitted as prima facie proof in an appeal of an ALS conflict with the Rules of Evidence prohibiting the introduction of hearsay evidence. We disagree.

The Ohio Supreme Court has stated that "evidence which might constitute inadmissible hearsay where stringent rules of evidence are followed must be taken into account in [administrative proceedings] where relaxed rules of evidence are applied." *Simon v. Lake Geauga Printing Co.* (1982), 69 Ohio St.2d 41, 44, 23 O.O.3d 57, 59, 430 N.E.2d 468, 470. Thus, the legislature may statutorily prescribe whether the Rules of Evidence should be adhered to in an administrative proceeding. See *id.* at 43, 23 O.O.3d at 58–59, 430 N.E.2d at 469–470. Because the appeal of an administrative license suspension is essentially an administrative proceeding, the legislature may enact a provision that allows the sworn statement of an arresting officer to serve as a measure of proof.

## G

Kirby claims that the provision of R.C. 4511.191(H)(1) that precludes the court from granting a stay of the ALS pending the outcome of the appeal improperly intrudes upon the constitutionally granted powers of the judiciary.

Even assuming, *arguendo,* that the stay provision is unconstitutional, see, *e.g., Baker,* 70 Ohio Misc.2d at 68–69, 650 N.E.2d at 1389–1390, there was no prejudice to Kirby in this case. Kirby raised the unconstitutionality of the stay provision through a motion to dismiss, which was overruled by the trial court. Kirby then pleaded no contest, and the trial court found him guilty. At most, the trial court could have granted a stay of the ALS, but dismissal of the underlying charges would not have been mandated or warranted. See *Lovsey, supra.*

Kirby also argues that the R.C. 4511.191(H)(1) prohibition of stays is unconstitutional because it conflicts with App.R. 8, which permits the courts of appeal to stay the proceedings before them. Kirby, however, lacks standing to argue this issue because he has not sought a stay of execution from this court.

## H

Finally, Kirby claims, for the first time on appeal, that the administrative license suspension provision of R.C. 4511.191 violates the Fifth Amendment's Double Jeopardy Clause. However, the failure of a criminal defendant to challenge the constitutionality of a statute or its application at the trial court level, when the issue is apparent at the time of trial, results in the waiver of the issue. *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, syllabus. Our review of the record shows that the double jeopardy claim was apparent, but not raised by Kirby, at the trial court level. Accordingly, we decline to consider the double jeopardy issue.

Kirby's first assignment of error is overruled.

### Assignment of Error II

"The trial court erred in concluding that the arresting officer developed probable cause to charge appellant with DUI/BAC offenses."

Kirby claims Sergeant Warren lacked probable cause to stop Kirby's van and that he lacked probable cause to arrest Kirby for driving under the influence of alcohol and driving with a prohibited breath-alcohol content. We do not agree.

Under the Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution, any governmental search or seizure must be supported by an objective justification. *State v.*

*Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1272–1273. The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to stop an individual if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent. *Id.* In justifying the investigative stop, the police officer " 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *Id.*, quoting *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906. To determine whether an officer has reasonable suspicion to cause a stop, the court must base its decision on the totality of the circumstances. *Id.*

In the present case, Sergeant Warren observed Kirby's van making improper lane changes, in violation of Akron City Code 73.02. In addition, Sergeant Warren had reason to believe that Kirby had solicited a woman for sex. We conclude that, under the totality of the circumstances, Sergeant Warren had reasonable suspicion to suspect criminal activity and to stop Kirby's van.

We next consider whether probable cause existed to arrest Kirby for driving under the influence. Kirby argues that he was not given any field sobriety tests, and Sergeant Warren did not have probable cause to arrest Kirby. Ohio courts, however, typically apply the totality-of-the-circumstances test to determine if there were reasonable grounds to believe a person had been operating a motor vehicle while under the influence of alcohol. *State v. McCaig* (1988), 51 Ohio App.3d 94, 554 N.E.2d 925.

At the suppression hearing, the police officers testified to the following pertinent observations made at the scene: (1) when asked if he had been consuming any alcoholic beverages prior to the stop, Kirby stated that he had had one or two drinks; (2) Kirby smelled of alcohol; (3) Kirby's eyes were bloodshot, his speech was somewhat slow and slurred, and he had trouble walking; (4) Kirby was unable to start his van by blowing into the ignition interlock device; and (5) it appeared that Kirby used an air compressor to bypass the ignition interlock system.

We conclude that these five factors, taken in their totality, provided the necessary probable cause for Sergeant Warren to arrest Kirby for operating a vehicle while under the influence of alcohol.

In the case of a charge for driving with a prohibited breath-alcohol content, the ordinance is violated merely by the fact that an individual's alcohol concentration in his breath is higher than the permitted level. *State v. Van Fossen* (1984), 19 Ohio App.3d 281, 284, 19 OBR 452, 455, 484 N.E.2d 191, 194–195. The record

shows that Kirby's breath-alcohol content was .146, well above the legal limit; thus, there was probable cause to arrest Kirby for the violation.

Accordingly, Kirby's second assignment of error is overruled.

*Judgment affirmed.*

BAIRD, P.J., and DICKINSON, J., concur.