OPINION
Defendant-appellant, Stacy Vermillion, appeals from her conviction of driving under the influence of alcohol (DUI) which was entered after she pled no contest in the Belmont County Court, Northern Division. For the following reasons, the trial court's judgment is affirmed.
On November 3, 1997 at 1:19 a.m., Trooper Jeff Herink of the Ohio State Highway Patrol was driving west on U.S. 40 in Richland Township. According to the trooper, he had to swerve to avoid hitting appellant's vehicle which had exited a gas station into his lane of travel. Appellant's vehicle did not have its head lights on at the time. Trooper Herink stopped appellant's vehicle and gave her a ticket for failing to yield from a private driveway in violation of R.C. 4511.44. Because the trooper suspected that appellant had been drinking, he administered field sobriety tests which appellant failed.
Thereafter, appellant was transported to the Belmont County Jail where a urine sample was collected. A female officer, Deputy Gibson, witnessed appellant's production of the sample. After the sample was obtained, Deputy Gibson gave it to Trooper Herink who mailed it to the Ohio State Highway Patrol Crime Lab. The results of the urine sample showed an alcohol content of .210 in violation of R.C. 4511.19(A) (4) which specifies the legal limit of .140. Since appellant had been convicted of DUI in September 1992, she was charged with second offense DUT. On December 23, 1997, appellant filed a motion to suppress on two grounds. The first branch of the motion dealt with alleged lack of probable cause to stop appellant's vehicle. The court overruled this branch, and the issue of probable cause has not been appealed to this court. The second branch of the motion set forth a general complaint that there were problems with appellant's urine sample and with the implementation of the Department of Health's regulations. A suppression hearing was held on January 14, 1998, after which the court denied this branch of the suppression motion also.
On January 28, 1998, appellant changed her plea to no contest on the DUI charge. In return, the state dismissed the failure to yield from a private driveway charge. As this was her second offense in six years, appellant was sentenced to thirty days in jail with twenty days suspended, fined $300 plus costs, and ordered to complete one year of probation. The court suspended appellant's license for one year but granted driving privileges. The above sentence was stayed pending this appeal.
Appellant sets forth two assignments of error, the first of which alleges:
 "Trial Court errored [sic] in overruling Appellant's Motion to Dismiss/Suppress based upon the State not operating in substantial compliance with the Department of Health Regulations in the collection and storage of urine specimens."
This assignment contains four arguments. First, appellant argues that the state failed to show substantial compliance with Ohio Adm. Code 3701-53-05(D). This rule requires the collection of a urine specimen to be witnessed to assure that the sample can be authenticated. Appellant argues that because Deputy Gibson witnessed the collection of appellant's urine, her presence was necessary at the suppression hearing. Appellant states that Trooper Herink's testimony that Deputy Gibson witnessed the collection and then gave him the sample is insufficient to authenticate the sample.
Pursuant to Evid.R. 901 (A), admissibility of evidence depends upon proper authentication. An item of evidence is properly authenticated if there is sufficient evidence to support a finding that the item is what the proponent claims. The proponent has the burden to show that it is reasonably certain that no alteration, substitution, or tampering of the item occurred.State v. Moore (1973), 47 Ohio App.2d 181, 183. Either direct testimony or inference can establish the chain of custody of an item. State v. Twyford (Sept. 25, 1998), Jefferson App. No. 93-J-13, unreported, *33
In the case at bar, the direct testimony of Trooper Herink establishes that he saw Deputy Gibson enter a restroom with appellant for the purpose of collecting a urine sample. Trooper Herink stated that upon exiting the restroom, Deputy Gibson gave him the sample. Trooper Herink then labeled the sample and performed other preparation for its mailing to the Crime Lab. That appellant produced the sample and not Deputy Gibson can be inferred. Moreover, appellant testified that she gave her urine sample to Deputy Gibson who had accompanied her into the restroom. Appellant stated that, upon leaving the restroom, Deputy Gibson set the sample on the counter where Trooper Herink was sitting. Thus, the chain of custody is sufficiently established to allow the judge to find that the sample that was produced by appellant is the same sample that Trooper Herink labeled and mailed. The remainder of the chain is not challenged by appellant.
Appellant's second argument is that the state failed to show substantial compliance with Ohio Adm. Code 3701-53-05(F). This rule provides that urine samples must be refrigerated while not in transit or under examination. Appellant's urine sample arrived at the Crime Lab at 1:57 p.m. on November 4, 1997. Tammy Bonner, a criminalist at the Crime Lab, testified that she removed the sample from the refrigerator to examine it at 9:25 a.m. on November 5, 1997. She also testified that it was standard operating procedure for the lab's receiving clerk to refrigerate samples upon receipt. Appellant claims that there is no evidence that her urine sample was refrigerated when it arrived at the Crime Lab. Appellant posits that the state should have called the receiving clerk to the stand to prove refrigeration occurred.
However, refrigeration can be inferred from the fact that Bonner retrieved the sample from the refrigerator. Moreover, whether the sample was refrigerated immediately upon its arrival at the lab is irrelevant. In State v. Plummer (1986), 22 Ohio St.3d 292, the Supreme Court of Ohio held that strict compliance with Ohio Adm. Code 3701-53-05(F) is unnecessary and unrealistic.Id. at 294. The court determined that nonrefrigeration of a sample for one and one-half hours between collection of the sample and mailing, and for four hours between arrival at the lab and analysis did not violate the administrative regulation. Id.
The court also stated that there is no prejudice to a defendant by failing to strictly comply with the refrigeration rule because nonrefrigeration tends to decrease the sample's alcohol content which would actually benefit the defendant. Id. at fn. 2. Thus, his argument is meritless.
Appellant then alleges that two sodium fluoride thymol tablets were added to her urine sample when only one should have been added. Appellant testified that she saw Deputy Gibson put something in her sample. Trooper Herink testified that he placed a tablet in the sample. The trooper's initials were marked on the Property Control Form after the pre-printed sentence, "SFT tablet added by." (Exhibit A). Deputy Gibson signed her name under the column entitled "property chain" indicating that she hand-delivered the sample to Trooper Herink. She did not put her initials next to the SFT tablet line. Bonner testified that she did not know what effect two tablets would have on the test results. She also stated that the addition of two tablets was unlikely because only one tablet comes in a kit.
The state could have presented the testimony of Deputy Gibson to refute appellant's claim that two tablets were added; however, the state had no pre-hearing notice that appellant was going to argue that two tablets were placed in the sample. To sufficiently raise the issue of noncompliance with alcohol testing regulations in a motion to suppress, the defendant must state his legal and factual allegations of noncompliance with sufficient particularity to put the prosecution and court on notice of the issues to be decided. State v. Qualey (Mar. 27, 1998), Montgomery App. No. 16705, unreported, *7. Moreover, the credibility of appellant's testimony is a matter for the factfinder. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The trial court could have properly found that appellant was being untruthful on the stand or that appellant was too drunk after her arrest to remember who put the tablet in her sample.
Appellant's fourth argument under her first assignment of error is that the state failed to show substantial compliance with Ohio Adm. Code 3701-53-06(C). This rule provides in pertinent part:
 "At least one copy of the written procedure manual in use for performing tests under rule 3701-53-03 of the Administrative Code shall be on file in the area where the analytical tests are performed and shall be available upon request. These written procedures shall be part of a written procedure manual of all analytical techniques or methods used by the laboratory for either alcohol or drug of abuse testing of biological fluids, and signed and dated by the designated laboratory director."
Appellant argues that this rule could not have been complied with because there is no designated laboratory director. The following examination of Bonner by appellant's attorney is relevant to this argument:
"Q: Who is the director of that facility?
"A: Supervisor Paul Boggs.
"Q: Is he the Laboratory Director?
 "A: He's Laboratory Director in regards to alcohol testing, yes.
 "Q: Ok, how long has Mr. Boggs been with the laboratory[?]
 "A: Hum . . . five (5) years, approximately five (5) years.
 "Q: And when was the last time the written procedure manual was updated with respect to testing urine samples?
 "A: I have a copy, I could tell you, I don't know off the top of my, I don't have recollection, but I could look that information up for you.
"Q: You don't know the answer at this time?
 "A: I don't have, I don't know what, I have a copy of the procedure that would indicate when it's been updated.
 "Q: To your knowledge has the procedure manual been updated before or after Mr. Boggs became the Director of the Laboratory?
 "A: After, it's been updated since he's been, he's not Director of the Laboratory, he's Director of Alcohol Program.
 "Q: Is there somebody who is designated as Laboratory Director, then[?]
 "A: At this particular point, no there isn't." (Tr. 25-26)
Initially, we note that the state had no notice that the existence of a laboratory director and the updating of the procedure manual would be an issue. If appellant wanted to know when the manual was updated, she could have issued a subpoenaduces tecum to compel production of the manual. Further, Bonner testified that she is a criminalist who performs urinalyses at the Crime Lab. Boggs is her supervisor. His title is Director of the Alcohol Program or Director of Toxicology. Simply because his title is not "laboratory director" does not mean that Ohio Adm. Code 3701-53-06 has been violated. As Bonner remarked, Boggs was the laboratory director in regards to alcohol testing. Thus, we find substantial compliance with the administrative regulation in question.
Appellant's first assignment of error is without merit.
Appellant's second assignment of error contends:
 "The Court errored [sic] in treating Appellant's OMVI violation as a second offense, thereby, violating Article One, Section 10 of the U.S. Constitution, prohibiting ex post facto laws and Article Two, Section 28
of the Ohio Constitution, prohibiting retroactive laws."
Appellant was sentenced as a second time OUT offender which carries a minimum jail sentence of ten days, a minimum fine of $300, and a minimum license suspension period of one year. See R.C. 4511.99(A) (2) (a) and R.C. 4507.16(B) (2). A first time OUT offense carries a minimum jail sentence of three days, a minimum fine of $200, and a minimum license suspension period of six months. See R.C. 4511.99(A) (1) and R.C. 4507.16(B) (1). A "look back period" is contained in Section 4511.99(A) (2) (a) of the Revised Code. This statutory period is used to determine how many prior DUIs the offender has committed. Prior to October 17, 1996, the look back period was five years. On that date, the period was extended to six years.
Therefore, when appellant was arrested for DUI in November 1997, the look back period was six years. In accordance, the instant DUI offense was labeled as a second offense due to the prior offense on appellant's record dating from September 1992.
Appellant argues that the extension of the look back period from five to six years, violated the constitutional prohibitions on ex post facto and retroactive laws. These prohibitions bar the government from imposing new duties and obligations upon a person's past conduct. Personal Serv. Ins. Co. v. Mamone (1936),22 Ohio St.3d 107, 109. See, also, State v. Cook (1998), 83 Ohio St.3d 404, for detailed definitions of retroactive and ex post facto laws. Appellant denounces the holding in Akron v. Kirby
(1996), 113 Ohio App.3d 452, wherein the Ninth Appellate District stated:
 "The penalty enhancement provisions do not punish the past conduct; instead, they merely increase the severity of a penalty imposed for an OMVI violation that occurs after passage of the enhancement legislation. Ohio courts have long accepted recidivist statutes." Id. at 461
See, also, State v. Sargent (Mar. 9, 1998), Butler App. No. CA97-05-097, unreported, 6; State v. Sanders (Sept. 29, 1995), Miami App. No. 95-CA-11 95-CA-12, unreported, 13.
Appellant is not contesting the general concept of sentence enhancement using prior convictions. Rather, she is contesting the specific extension of a look back period after the first offense but prior to the second offense. Either way, appellant's argument fails. The legislative amendment that extended the look back period did not provide for additional punishment for a prior offense. It merely gave notice as to the legislature's new definition of a second offense. Appellant had notice before she committed the second offense that the look back period was six years instead of five. See Blackburn v. State (1893), 50 Ohio St. 428,438 (stating that the prohibitions against ex post facto and retroactive laws do not apply to a sanction levied for a present violation of an existing law). Accordingly, the extension of the period did not violate any constitutional prohibitions against ex post facto or retroactive laws. Appellant's second assignment of error is without merit. The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs.
Waite, J., concurs.
APPROVED:
 ______________________ Gene Donofrio Judge