DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-appellant, James A. Kulasa, appeals his conviction in Akron Municipal Court for driving with a prohibited breath alcohol content (BAC). We affirm.
On March 20, 1999, at about 3:40 a.m., Sgt. Rick Lorek of the Village of Richfield Police Department initiated an investigatory stop of Defendant on Interstate 77 near the intersection of Brecksville and Wheatley Roads. Sgt. Loreck made the stop after he observed Defendant making an illegal U-turn on Brecksville Road, changing lanes without signaling to enter the I-77 ramp, and weaving between the lanes on I-77. As he spoke to Defendant, Sgt. Lorek noted a moderate odor of alcohol and decided to administer field sobriety tests. Defendant was then transported to the Richfield Village Police Department, where additional sobriety tests were administered, and to the Bath Police Department for a breathalyzer test. Upon their return to the Richfield Station, following the breathalyzer test at the Bath Station, Sgt. Lorek formally advised Defendant that he was under arrest.
Defendant was charged with driving under the influence of alcohol, driving with a prohibited breath alcohol content, making an improper lane change, and making an illegal turn. On April 7, 1999, Defendant moved to suppress all evidence obtained by Richfield and Bath Police Departments after the initial field tests were completed. Following a hearing, the motion was denied on May 20, 1999. On August 31, 1999, Defendant pleaded no contest to the charges and the trial court convicted him on the BAC count. On the same day, Defendant filed a motion to dismiss for failure to timely bring the matter to trial. The motion was denied. This appeal followed.
 ASSIGNMENT OF ERROR I
The trial court erred in denying Defendant's motion to suppress.
In his first assignment of error, Defendant argues that the trial court improperly determined that an arrest occurred when he was transported in the patrol car from the scene of the stop to the Richfield Police Department, thereby permitting consideration of the BAC test. We disagree.
When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and to evaluate the credibility of the witnesses. See State v. Mills (1992), 62 Ohio St.3d 357,366. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592,594. Accepting the facts as found by the trial court as true, the appellate court must then independently determine as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. State v. Klein
(1991), 73 Ohio App.3d 486, 488.
Defendant first contends that the transport to the Richfield and Bath Stations was illegal because Sgt. Lorek lacked probable cause to arrest. Probable cause to arrest exists where there is "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious [person] in the belief that [an individual] is guilty of the offense with which he [or she] is charged." State v. Medcalf (1996),111 Ohio App.3d 142, 147, citing Huber v. O'Neill (1981),66 Ohio St.2d 28, 30, quoting Ash v. Marlow (1851),20 Ohio 119, paragraph one of the syllabus. When reviewing drunk driving cases, courts traditionally apply the totality-of-the-circumstances test to determine if there are reasonable grounds to believe a person has been operating a motor vehicle while under the influence of alcohol. Akron v. Kirby (1996), 113 Ohio App.3d 452, 464. Sgt. Lorek's testimony was sufficient to support the trial court's conclusion that he had probable cause to arrest Defendant. In addition to his observations of erratic driving mentioned above, Lorek testified that Defendant failed the Gaze Nystagmus test and characterized his performance on other field tests as "borderline failure." He said Defendant swayed when he exited his vehicle, that his reactions were slow, and that he seemed disoriented and confused. His speech was "mumbled."
Defendant further argues that the results of the BAC test must be suppressed because he was not arrested until after the test had been concluded, whereas an arrest is prerequisite to its administration. Generally, "an arrest, in the technical, as well as the common sense, signifies the apprehension of an individual or the restraint of a person's freedom in contemplation of the formal charging with a crime." State v. Darrah (1980), 64 Ohio St.2d 22,26. Its existence must be determined from "the elements and factors which, in any given case, constitute the process by which an arrest occurs." State v. Noe (Sept. 3, 1982), Fulton App. No. F-82-3, unreported, at *6-7, 1982 Ohio App. LEXIS 14433.
The Ohio Supreme Court has articulated four elements necessary to the existence of an arrest:
 The existence of an arrest is dependent * * * upon the existence of four requisite elements: (1) An intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested.
 State v. Barker (1978), 53 Ohio St.2d 135, paragraph one of the syllabus, certiorari denied (1978), 439 U.S. 912, 58 L.Ed.2d 260.
An arrest can occur under either of two circumstances. An officer may execute formal arrest by explicitly and unequivocally informing the subject that he is under arrest. An arrest also occurs, however, when a police officer performs a seizure of the subject that is tantamount to an arrest. See State v. Qualey
(Mar. 27, 1998), Montgomery App. No. 16705, unreported, 1998 Ohio App. LEXIS 1156, at *11. A seizure is sufficient to give rise to an arrest when the four elements noted above are present. Id., citing State v. Darrah, 64 Ohio St. 2d at 26.
An arrest can be accomplished without the arresting officer actually telling the suspect that he is "under arrest":
 The magic words, "you are under arrest," are not necessary to constitute an arrest. Any police confinement beyond the parameters in Terry v. Ohio * * * is the key to what constitutes an arrest. If one is deprived of his movement by the state, he is in custody and considered under arrest, if he could not have attempted to leave. * * *
 (Citations omitted.) State v. Maurer (1984), 15 Ohio St.3d 239, 255-56, certiorari denied (1985), 472 U.S. 1012, 86 L.Ed.2d 728. At the same time, it has been held that the words alone do not necessarily create a valid arrest. Noe, supra at *8-9 (Concluding that an arrest did not occur when a state trooper advised a suspect that he was being arrested, but rather when two deputy sheriffs escorted the suspect from the Trooper's presence to a sheriff's patrol car, "frisked" him, placed him in the rear seat of the car, and transported him to County jail.)
Defendant argues that Sgt. Lorek's testimony shows he neither arrested Defendant, nor had any intent to arrest him, until after he received the results of the breath test. As the trial court indicated, however, Sgt. Lorek's testimony is somewhat conflicting. Sgt. Lorek did, in fact, testify on cross-examination that Defendant was not placed under arrest until they returned to the Richfield Police Station after the breathalyzer test was administered at the Bath Police Station. On the other hand, there was also testimony to support the trial court's conclusion that the arrest actually occurred when officers seized Defendant's person at the scene of the stop and transported him to the Richfield Station. The scenario exhibits the four requisite elements of an arrest under Barker, supra.
Intent to arrest can be found in Sgt. Lorek's conduct at the stop scene. Even though Lorek testified he did not arrest Defendant until after the BAC test was completed, his actions and other statements belie this assertion. He testified that Defendant would not have been permitted to leave if he had chosen not to cooperate with police. It is clear from his testimony that Sgt. Lorek believed that Defendant was too impaired to drive. Sgt. Lorek's intent to arrest is also evident from the fact that his actions at that point were focused upon obtaining further evidentiary support for the charges he anticipated making against Defendant. The transport to the Richfield Station was for the purpose of confirming his original conclusions about Defendant's poor performance on the field sobriety tests at the stop scene. Moreover, the fact that Sgt. Lorek had decided already at that point, based upon his observations and the failed field tests, that he had probable cause to support an arrest could reasonably lead to a determination that Lorek had formed an intent to arrest Dependant:
 Q: So it is only fair to assume that at the time of the stop and immediately prior to asking him to get in your vehicle and go to the Richfield Police Station, that you did not have probable cause to arrest him for DUI. Is that a fair statement?
 A: I believe I had enough cause, but I wanted to do additional testing on behalf of the person . . .
 With respect to the second element, Sgt. Lorek's authority to make the arrest in this case is unquestioned. At the time of the stop, Sgt. Lorek was in uniform and in a marked car. He was clearly engaged in official duties.
The third element of the test, actual or constructive seizure or detention of the person, was met by Sgt. Lorek's custodial control over Defendant, that culminated in his physical detention in the patrol car. Even though Sgt. Lorek said that he had considered Defendant's actions in accompanying him to Richfield and Bath to be voluntary, he also testified that Defendant was not free to leave and that he would have prevented Defendant from driving away. Defendant was in the officer's custody.
Finally, although there is no direct evidence of Defendant's state of mind, he understood his freedom was limited by Sgt. Lorek's actions. Before they left the scene, the two of them discussed what arrangements could be made for the security of his pick-up and its removal. Defendant knew he could not simply drive away.
Although Defendant was not explicitly arrested prior to the BAC, the circumstances demonstrate that an arrest actually occurred at the time of the stop. Thus, the trial court properly determined that Defendant was placed under arrest when he was transported from the scene of the stop. The first assignment of error is without merit.
 ASSIGNMENT OF ERROR II
The trial court erred in denying Defendant's motion to dismiss.
In his second assignment of error, Defendant contends that the charges against him should have been dismissed for failure to provide a speedy trial, since he was improperly charged with the delay resulting from the continuance of the trial date. We disagree.
Trial was scheduled to start July 26, 1999. However, when Defendant appeared on that date without his attorney, a continuance was ordered to August 31, 1999. It is this continuance, Defendant argues, that violates the mandate of R.C.2945.71(B)(2).
Defendant contends that the extension should not be charged against him, because he did not have adequate notice of the July trial date. He argues that the notice he received was inadequate, because it did not expressly state that the proceeding to which he was being summoned was a trial. The notice, however, contained all other pertinent information. It said: "You are hereby notified to appear as DEFENDANT. You are to report to ROOM 917 or JUDGE CARLA D. MOORE ON: July 26, 1999. AT: 3:30 PM." The Ohio Supreme Court has said that the notice necessary to satisfy due process requires only that a court give "some form of reasonable notice" to the parties. Ohio Valley Radiology Assoc. v. OhioValley Hosp Assn. (1986), 28 Ohio St.3d 118, 124. A notice ordering an individual to appear as a defendant before the judge who conducted preliminary matters in that individual's criminal case provides reasonable notice that the appearance is for a trial, even though the word is omitted.
Furthermore, Defendant has failed to demonstrate that the delay was not precipitated by his own actions on July 26, 1999. There is no record of what occurred in Judge Moore's courtroom on that date, when the prosecution was prepared to proceed with a trial, but Defendant had no attorney. "An appellant has the responsibility of providing the reviewing court with a record of the facts, testimony, and evidentiary matters that are necessary to support the appellant's assignments of error." State v.Tillman (1997), 119 Ohio App.3d 449, 454. In the absence of such a record or a substitute statement of the evidence as permitted by App.R. 9(C) and (D), an appellate court must presume regularity in the trial court's proceedings and accept the validity of its judgment. Id.; State v. Roberts (1991), 66 Ohio App.3d 654, 657.
Ohio's speedy trial provisions afford a valuable right to an accused. Statutes implementing the constitutional right to a speedy public trial "are mandatory and must be strictly complied with by the State." State v. Cross (1971), 26 Ohio St.2d 270, paragraph one of the syllabus. Certainly, it would have been preferable to have a complete record here from which it could be determined that those rights were not violated. However, Defendant did not meet his burden to supply a record that would permit this court to adequately review his claimed error. Hence, we are bound to uphold the trial court's ruling that the August 31, 1999 trial was within time pursuant to R.C. 2945.71(B)(2). The second assignment of error is also without merit.
Defendant's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 _______________ LYNN C. SLABY
FOR THE COURT BATCHELDER, P.J.
WHITMORE, J. CONCUR